In re James B. LEELING, Social Security No. 520–28–0429, Debtor.

James B. LEELING, Plaintiff,

v.

Jerry L. SMITH and Sharlene Smith, Defendants.

Bankruptcy No. 90–17368 PAC. Adv. No. 91 1066 PAC.

United States Bankruptcy Court, D. Colorado.

July 15, 1991.

Daniel W. Dean, Law Offices of Daniel W. Dean, Fort Collins, Colo., for plaintiff.

William J. Martinez, William M. Bass, Pendleton & Sabian, P.C., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS

PATRICIA A. CLARK, Bankruptcy Judge.

This matter comes before the Court upon the motion to dismiss filed by defendants Jerry L. Smith and Sharlene Smith (Smiths) to the complaint for turnover of property filed by the debtor, James B. Leeling (Debtor). Briefs were filed, a hearing was held and oral argument was presented.

The relevant facts have been stipulated to and are as follows: In 1989, the Debtor became involved in a real estate transaction with the Smiths whereby he was to purchase property from them. On March 30, 1990, as part of the transaction, the Debtor executed a $50,000 promissory note to the Smiths as earnest money consideration. The Debtor also executed an Assignment for Security whereby the $50,000 note was secured by moneys owed to the Debtor from Mr. Greg Van Wagner. Those moneys owed to the Debtor were in the form of another promissory note (the Van Wagner note) which required Mr. Van Wagner to make payments to the Debtor in the approximate amount of $3,531.65 per month. On that same date, March 30, 1990, the attorney for the Smiths, Mr. Dan Kerst (Kerst) took physical possession of the Van Wagner note on behalf of his clients. The real estate transaction was to have closed on June 1, 1990, but the Debtor failed to perform thus placing him in default on the note owed to the Smiths. On June 20, 1990, Mr. Kerst wrote to Debtor's counsel informing him that a certificate of default had been issued to Mr. Van Wagner instructing that all future payments be made to the Smiths until the Debtor's note to them was satisfied. The letter further stated the Smiths would remain in posses-

sion of the Van Wagner note. Mr. Van Wagner has since made all monthly payments required of him to the Smiths.

The Debtor filed his petition under Chapter 11 of the Bankruptcy Code on November 9, 1990. Up until that time the Debtor had not objected to Van Wagner making his payments to the Smiths. However, on November 14, 1990 Debtor's counsel made a demand upon Kerst to return the Van Wagner note and account for all moneys received by the Smiths prior to November 9, 1990. Kerst refused the request and this turnover action followed. There is no question that the Van Wagner note is worth more than the $50,000 owed to the Smiths.

The Smiths argue for dismissal of the complaint on two grounds. First, they contend that the initial proceeds of the Van Wagner note necessary to satisfy the Debtor's obligation to the Smiths does not constitute property of the estate within the meaning of 11 U.S.C. § 541, since the Smiths were in possession of the Van Wagner note prior to the Debtor's default on June 1, 1990. Secondly, they maintain that they foreclosed upon the Van Wagner note pursuant to Section 4-9-505(2), C.R.S., and thus the Debtor had no legal or equitable interest in the initial proceeds of the Van Wagner note, again excluding the property from the estate. Under both arguments the Smiths assert the Court lacks subject matter jurisdiction over the property, and the complaint should be dismissed.

The Debtor's response only addresses the Smiths' second argument, and maintains there was not sufficient notice under Section 4-9-505(2), C.R.S., so as to constitute a strict foreclosure on the Van Wagner note.

There are thus two issues before the Court: First, does 11 U.S.C. § 542 authorize the turnover of property pledged to and in possession of a secured party prior to any default by the Debtor, or are the initial proceeds from the note excluded from property of the estate. Secondly, did the Smiths foreclose on the Van Wagner note so that the Debtor had no legal or equitable interest in the initial proceeds to the note, thus excluding those proceeds from property of the estate.

The parties stipulated to the admission of the exhibits outside the pleadings and since the Court will consider them in determining the issues, the Smiths' motion to dismiss has been treated by the Court as a motion for summary judgment pursuant to Bankruptcy Rule 7056. *Lawrence National Bank v. Edmonds,* 924 F.2d 176 (10th Cir. 1990). Summary judgment is appropriate when the material submitted to the Court "show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Cattrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is precluded when there is dispute over facts that might affect the outcome of the suit under governing law. *Carey v. U.S. Postal Serv.,* 812 F.2d 621 (10th Cir.1987). In all instances, summary judgment is a drastic remedy and consequently, the Court is required to review the record, pleadings, and inferences in a light most favorable to the party opposing the motion, which in this case is the Debtor. *Grayson v. American Airlines,* 803 F.2d 1097 (10th Cir.1986); *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 613 (10th Cir. 1988).

Property of the estate is generally defined in 11 U.S.C. § 541(a)(1) as meaning "all legal and equitable interests of the debtor in property as of the commencement of the case". At the same time, 11 U.S.C. § 542(a) states in relevant part:

(a) except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

In *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court determined that a bankruptcy estate includes property seized by a levying creditor from a debtor in default prior to the filing of a petition for reorganization. As a result such property was subject to the turnover provisions of Section 542 and in that case, the IRS was required to return to the debtor property seized prepetition. The Supreme Court also ruled that by turning over the seized property, the IRS did not lose its rights in the property and maintained its status as a secured creditor. The Court stated "the IRS, under section 363(e), remains entitled to adequate protection for its interests, to other rights enjoyed by secured creditors, and to the specific privileges accorded tax collectors." 462 U.S. at 211–12, 103 S.Ct. at 2317.

In *Whiting Pools*, the Supreme Court stated in a footnote

> We do not decide whether any property of the debtor in which a third party holds a possessory interest independent of a creditor's remedies is subject to turnover under § 542(a). For example, if property is pledged to the secured creditor so that the creditor has possession prior to any default, 542(a) may not require a turnover. *See* 4 L. King, *Collier on Bankruptcy*, ¶ 541.08[9], p. 541–53 (15th ed. 1982).

The Smiths' position is that based upon this footnote and because they were in possession prior to default, the Debtor has no remaining legal or equitable interest in the initial proceeds from the Van Wagner note.

Recently, one bankruptcy court declined to apply the *Whiting Pools* footnote to similar facts. In *In re Ayscue*, 123 B.R. 28 (Bankr.E.D.Va.1990), the debtor pledged stock to a creditor to secure the payment of two demand notes which were not in default. When the debtor filed a Chapter 7, the trustee filed a turnover action pursuant to Section 542. The creditor argued that because the stock was pledged and in their possession prior to any default, under the *Whiting Pools* footnote the trustee could not compel turnover of the stock. The *Ayscue* court was not persuaded and was skeptical of the application of the footnote. The Court noted that the dicta in *Whiting Pools* relied upon *Collier on Bankruptcy* for their proposition. The Court then looked to the statement in *Collier*, and found that it was based upon a 1937 case involving the old Bankruptcy Act, *In re Rogers*, 20 F.Supp. 120 (N.D.W.Va.1937). The *Ayscue* court then opined "The rule stated in *Collier*, based upon a pre-code concept of property of the estate, contrasts sharply with the Bankruptcy Code's treatment of other claims secured by property in the possession of a secured creditor." 123 Bankr. at 30. The definition of property of the estate under Section 541 of the Bankruptcy Code is more expansive than under the old Bankruptcy Act, and "The legislative history of the bankruptcy code clarifies that § 541(a)(1) includes 'property recovered by the trustee under section 542 of proposed title 11, if the property recovered was *merely out of the possession of the debtor, yet remained "property of the debtor."* '" (Emphasis added.) 123 B.R. at 30, citing S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5868.

■ As in *Ayscue*, the Smiths were in possession of the Van Wagner note because it was the only way to perfect their security interest [1] under Colorado law. Section 4–9–305, C.R.S.[2] The lack of default does not entitle the Smiths to any different treatment than other secured creditors holding a properly perfected security interest. In *Whiting Pools* the secured creditor in possession of the debtor's property prior to filing as a result of the debtor's default was subject to the turnover provisions of Section 542. This Court

---

1. With certain narrow exceptions not relevant here. *See* Section 4–9–304(4) and (5), and Section 4–9–306(2) and (3), C.R.S.

2. In such cases, secured creditors almost universally take possession of a pledged instrument at the inception of an agreement and prior to a default. Otherwise, it would be a difficult task indeed for a levying creditor to persuade the defaulting debtor to hand over the pledged instrument for collection purposes.

is not persuaded that situation should be distinguished from the case at bar merely because the Smiths were in possession prior to any default, since such possession is almost necessary to perfect given the nature of the Section 4-9-305, C.R.S., requirements. Consequently, the Court finds that the entire Van Wagner note is property of the estate and is subject to the turnover requirements imposed by 11 U.S.C. § 542(a).[3]

█ The Smiths also maintain that because they properly foreclosed on the Van Wagner note pursuant to Colorado law, the estate has no interest in its initial proceeds and this Court lacks subject matter jurisdiction to require turnover. It is true that if a proper strict foreclosure did occur on the note under Section 4-9-505(2), C.R.S. and the Debtor failed to redeem in a timely fashion then the estate would not have an interest in the initial proceeds of the Van Wagner note which are necessary to satisfy the outstanding obligation to the Smiths. Section 4-9-505(2), C.R.S., states

> **4-9-505 Compulsory Disposition of Collateral—Acceptance of the Collateral as Discharge of Obligation.** (2) In any other case involving consumer goods or any other collateral, a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection (2).... If the secured party receives objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the secured party must dispose of the collateral under section 4-9-504. In the absence of such written objection, the secured party may retain the collateral in satisfaction of the debtor's obligation.

█ In essence, the above section of the Colorado U.C.C. is a statutory analog of the common law concept of accord and satisfaction. *See Nelson v. Armstrong,* 99 Idaho 422, 582 P.2d 1100, 1108 (1978). In order to have a valid strict foreclosure under Section 4-9-505(2), the creditor must give proper notice to the debtor. Once the notice provision is satisfied, the debtor has a 21-day redemption period in which to object to the retention, failing which the creditor may keep the collateral in full satisfaction of the debt. *Vogel v. Carolina Int'l, Inc.,* 711 P.2d 708, 712 (Colo.App. 1985). "To constitute notice under § 4-9-505(2), the secured party must act in good faith and must take those steps a reasonable person would take to effect good faith notice." *Vogel v. Carolina Int'l, Inc.,* 711 P.2d at 712 citing *Begay v. Foutz & Tanner, Inc.,* 95 N.M. 106, 619 P.2d 551 (1979). One court has interpreted this provision to mean "that the creditor must in some way have manifested an intent to accept the collateral in full satisfaction of the debtor's obligation." *Nelson v. Armstrong, supra,* 582 P.2d at 1108. Another court has stated that the 9-505(2) notice "must be of strict foreclosure in particular, and not simply of an intent to foreclose." *Fletcher v. Cobuzzi,* 499 F.Supp. 694, 699 (W.D.Pa.1980). In *Alamosa Nat'l Bank v. San Luis Valley Grain Growers, Inc.,* 756 P.2d 1022 (Colo. App.1988), the Colorado Court of Appeals concluded "[a]dherence to the letter of the U.C.C. results in the conclusion that there is no retention of collateral in satisfaction of the obligation under § 4-9-505 when the secured party does not give written notice of his intention to so retain." 756 P.2d at 1026.

Here, the Smiths maintain that the June 20, 1990 letter sent to Debtor's counsel by Kerst satisfied the notice requirements. In that letter Kerst states in part on page 3:

> I have, concurrently herewith, delivered a Certificate of Default to Greg Van Wagner, and have instructed him to Smiths pay [sic] all payments hereafter due on the February 7, 1974, Van Wagner Note to the Smiths until Mr. Leeling's Note obligation to the Smiths is fully paid, including all accrued interest, attorney's fees, and costs.... Accordingly, the Smiths, as Sellers, have exercised their remedy to retain the earnest

3. The Smiths certainly are entitled to adequate protection pursuant to Section 363(e).

money payment and Note as liquidated damages.

Yet, two sentences later Kerst continues

Although not required by the Note, demand is hereby made for Mr. Leeling's full payment of the March 30, 1990, Promissory Note, together with all accrued interest and attorney's fees incurred to date. Please contact me if Mr. Leeling intends to pay off the Note so that I can provide you a current statement as to interest accrued and the fees incurred.

The Debtor argues on numerous grounds that the notice provision of Section 4–9–505(2) has not been satisfied. First, the Debtor states the last section of the quoted letter is inconsistent with retention in full satisfaction of the debt. Next, the Debtor contends that nowhere within Kerst's letter is the specific phrase "retention in satisfaction of the debt" or the term "foreclosure" mentioned. Third, the Debtor asserts that Kerst's use of the phrase "until Mr. Leeling's Note obligation to the Smiths is fully paid" is at odds with keeping the note in full satisfaction, because if the Van Wagner note was kept in full satisfaction, the obligation would be fully paid. Lastly, the Debtor maintains that the request through his counsel that no further disbursements be made on the Van Wagner note to the Smiths constitutes an objection to the foreclosure under Section 4–9–505(2), even though that request was made prior to the June 20, 1990 letter and not within 21 days thereafter.

The Court is persuaded by the Debtor's arguments and thus finds notice was not proper pursuant to the mandate of Section 4–9–505(2). Most importantly, it was inconsistent to have stated in the Kerst letter that the Van Wagner note would be retained in full satisfaction of the debt, and then two sentences later demand full payment by the Debtor on the outstanding note he owed to the Smiths. If the Smiths were retaining the Van Wagner note in full satisfaction, then the debtor need not have made any more payments on his outstanding debt to the Smiths, and the demand for full payment could certainly be viewed as an ambiguity as to the Smith's intentions. Further, while it might not be necessary to use the magic words "foreclosure" or "retain in full satisfaction of the indebtedness" the intent to retain must be such that a reasonable person would understand that intent, and it must be clearly manifested by the secured creditor. *Nelson v. Armstrong, supra.* The Court does not believe that such a clear intent was manifested by the Smiths and consequently, there was not a foreclosure pursuant to Section 4–9–505(2), as its notice requirements have not been complied with.[4]

ORDERED that the Smiths' motion to dismiss is denied.

FURTHER ORDERED that judgment will enter for the Debtor.

FURTHER ORDERED that the Smiths furnish to the Debtor an accounting of all payments made to them under the Van Wagner note within 30 days of the date of entry of this Order.

FURTHER ORDERED that within 30 days from the date of issuance of this Order and prior to any turnover of the Van Wagner note, the parties submit to the Court a stipulation as to adequate protection pursuant to 11 U.S.C. § 363(e). If an agreement cannot be reached, the Court will set a hearing upon request of the parties.

---

**4.** The Court does not decide whether the Debtor's request not to make disbursement on the Van Wagner note constituted an objection within in 21 days after the Section 4–9–505(2) notice, since the notice itself was deficient.