In re Alice L. DUNLAP, James and Catherine Mitchell, Debtors.

Alice L. DUNLAP, James and Catherine Mitchell, Plaintiffs,

v.

CASH AMERICA PAWN OF NASHVILLE, Defendant.

Bankruptcy Nos. 391–09805, 391–10113. ADV. No. 391–0564A.

United States Bankruptcy Court, M.D. Tennessee.

Aug. 20, 1992.

Thomas C. Nance, Nashville, Tenn., for Alice L. Dunlap and James and Catherine Mitchell.

Anita L. Whisnant, Trabue, Sturdivant & DeWitt, Nashville, Tenn., for Cash America Pawn of Nashville.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

Two issues are presented: (1) until what point in the deterioration of the relationship between a borrower and a Tennessee pawnbroker may a Chapter 13 debtor use § 1322(b)(2), (3) or (4) to modify, waive or cure defaults with respect to the pawnbroker's secured claim; and (2) may a Chapter 13 debtor use 11 U.S.C. § 542 to recover possession of property that has been pawned. In this circuit, *Federal Land Bank v. Glenn (In re Glenn)*, 760 F.2d 1428 (6th Cir.1985) permits a Chapter 13 debtor to modify, waive or cure defaults with respect to the secured claim of a pawnbroker until sale or other disposition of the pawned property. A Chapter 13 debtor may use § 542 to recover possession of pawned property if the debtor provides adequate protection under § 361. The following are findings of fact and conclusions of law. Bankr.R. 7052.

## I. DUNLAP TRANSACTION

On July 22, 1991, Alice L. Dunlap pawned her 1983 Cadillac Seville to Cash America Pawn, a pawnbroker licensed under TENN.CODE ANN. § 45–6–201 *et seq.* Dunlap received a loan of $2,500 with a "due date" of August 22, 1991. The finance charge was $625: $50 designated as "interest" and $575 as "service charge."

The Annual Percentage Rate for this transaction was 300 percent.

The contract gave Dunlap 50 days after "maturity" of the loan in which to "redeem" her car. Fifty days is the minimum statutory redemption period required by TENN.CODE ANN. § 45–6–211. At expiration of this 50–day period, the contract and TENN.CODE ANN. § 45–6–211 required Cash America to give the debtor 10 days' notice that the pledged property must be redeemed or it "will be forfeited to the pawnbroker under your agreement; and your right to redeem your pledged property will thereafter be divested." TENN. CODE ANN. § 45–6–211(c).

Dunlap failed to repay Cash America on the due date. The redemption period in the contract expired on October 21, 1991.[1] On October 11, 1991, Dunlap filed a Chapter 13 petition.

Dunlap's Chapter 13 plan treated Cash America as a secured claim holder to be paid $3,125 over 32 months at $100 per month plus 10 percent interest. On November 4, 1991, Dunlap filed a complaint under 11 U.S.C. § 542 for turnover of the 1983 Cadillac Seville. Cash America objects to confirmation[2] and objects to turnover.

## II. MITCHELL TRANSACTION

On July 12, 1991, James D. Mitchell pawned a camera, necklace and chain to Cash America for a $35 loan. Mitchell's loan had a due date of August 12, 1991. The Mitchell contract called for a finance charge of $7.00: $.70 interest and $6.30 "service charge," for a total payment due

---

1. This adversary proceeding is before the court on cross-motions for summary judgment and a stipulation of facts. Although not stipulated, the court assumes that Cash America gave the 10–day notice required under its contract because no party has argued a failure of notice. Similarly, the contract and TENN.CODE ANN. § 45–6–211(c) required the pawnbroker to "publish at least one time, a notice in a local newspaper" concerning the pledgor's right of redemption. There is no stipulation that notice was published by Cash America; however, no party has argued a failure to publish notice. *See Leeling v. Smith (In re Leeling)*, 129 B.R. 637

(Bankr.D.Colo.1991) (a promissory note pledged as collateral remained property of the bankruptcy estate at least in part because the secured claim holder failed to accomplish a proper foreclosure under applicable state law before the petition).

2. Dunlap's Chapter 13 plan was confirmed on December 5, 1991. Cash America filed a timely motion to alter or amend the order of confirmation. That motion was consolidated with the adversary proceeding for turnover under § 542.

of $42 and an Annual Percentage Rate of 240 percent.

On September 30, 1991, Cash America mailed Mitchell the 10–day notice required by TENN.CODE ANN. § 45–6–211. October 12, 1991 was designated as the last day for Mitchell to redeem the pledged property. Mitchell failed to redeem and the pledged items were placed for sale by Cash America. On October 21, 1991, Mitchell filed a Chapter 13 petition. Prior to the petition, the necklace pawned by Mitchell was sold. The camera and chain remain in Cash America's possession.

Mitchell's Chapter 13 plan treats Cash America as a secured creditor with a secured claim of $100 payable at the rate of $15 per month with 10 percent interest. On October 24, 1991, Mitchell filed a motion for turnover of the necklace, camera and chain. Cash America objects to turnover.

### III.

In *Federal Land Bank v. Glenn (In re Glenn)*, 760 F.2d 1428 (6th Cir.1985), the United States Court of Appeals for the Sixth Circuit fixed the sale of the mortgaged property as the point in the real estate foreclosure process after which a Chapter 13 debtor ceased to have sufficient rights in the collateral to use § 1322(b)(5) to cure defaults. In *Glenn*, state courts had entered prepetition foreclosure judgments against the debtors and in two of the consolidated cases, the properties had been sold at foreclosure. 760 F.2d at 1428. The Sixth Circuit recognized that "[a]ll courts agree that at some point in the foreclosure process, the right to cure a default is irretrievably lost; however, the [Bankruptcy Code] itself provides no clear cut-off point except that which the courts may see fit to create." 760 F.2d at 1435. Although acknowledging that some courts of appeals looked to state law to determine the limits on a Chapter 13 debtor's powers under § 1322(b)(5), the Sixth Circuit considered and rejected the argument that the power to cure defaults is restricted to statutory or contractual redemption rights or default provisions. The court explained:

> [W]e avoid any effort to analyze the transaction in terms of state property law. Modern practice varies so much from state to state that any effort to satisfy the existing concepts in one state may only create confusion in the next. Thus, in construing this federal statute, we think it unnecessary to justify our construction by holding that [a sale under state law] "extinguishes" or "satisfies" the mortgage or the lien, or that the mortgage is somehow "merged" in the judgment or in the deed of sale under state law.

760 F.2d at 1436. The Sixth Circuit held:

> The event we choose as the cut-off date of the statutory right to cure defaults is the sale of the mortgaged premises. We pick this in preference to a number of other potential points in the progress of events ranging from the date of first default to the day the redemption period expires following sale.

760 F.2d at 1435.

Cash America argues that a Chapter 13 debtor's right to manage a claim secured by pawned property should be controlled by the contract of pawn and/or by the redemption provisions of Tennessee law. Nowhere does § 1322(b)(2), (3) or (5) restrict a Chapter 13 debtor's power to cure, waive or modify the rights of a secured claim holder in the manner argued by Cash America. This position was rejected by the Sixth Circuit in *Glenn* in a context much more favorable to the secured claim holder. *Glenn* dealt with real estate mortgages. The *Glenn* court recognized that Congress intended special protection from modification for home mortgage lenders in Chapter 13 cases in its wording of § 1322(b)(2).[3] Notwithstanding this special treatment, the Sixth Circuit adopted a fed-

---

3. 11 U.S.C. § 1322(b)(2) provides:
    (b) ... the plan may—
       modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the* *debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; (emphasis added).

eral rule to define the boundary of a Chapter 13 debtor's powers under § 1322(b) with respect to mortgage holders.

There is no special treatment of pawnbrokers in the Bankruptcy Code. A pawnbroker is a species of secured claim holder. The pawnbroker is in possession of its collateral and has a contract for loan with the debtor. That the debtor defaulted before filing bankruptcy, or that a contractual "redemption" period has expired before the petition, cannot define the debtor's right to cure default, waive default, or modify the terms of its contract under § 1322(b). As in *Glenn*, a federal rule must be fashioned.

It is this court's opinion that the United States Court of Appeals for the Sixth Circuit, when presented with a personal property analogue to *Glenn*, would pick the same point—sale or disposition of the collateral—as the point after which a Chapter 13 debtor may not use the powers in § 1322(b) to manage the secured claim through a plan. This conclusion is supported by the same reasons cited in *Glenn*.

The language of the Bankruptcy Code does not fix the point after which a Chapter 13 debtor cannot use the powers in § 1322(b) to affect claims secured by pawned property. The sale or other disposition of pawned property is "a measurable, identifiable event of importance in the relationship of the parties." 760 F.2d at 1435. Notwithstanding conflicting state pawnbroker statutes,[4] sale or other disposition of pawned property is an event that all pawnbroker statutes have in common. Sale or other disposition introduces a "new element" into the relationship between the borrower and the pawnbroker—the borrow-

er loses all reasonable expectation of a right to reacquire possession, and ownership passes to a third party. Sale or other disposition "normally comes after considerable notice giving the debtor opportunity to take action." 760 F.2d at 1435.

As these cases demonstrate, loans secured by pawn typically have short terms and especially high Annual Percentage Rates. Selection of any date earlier than sale or other disposition of the collateral as the termination point for a Chapter 13 debtor's rights to manage a claim secured by the pawn of personal property would frustrate congressional intent that Chapter 13 debtors accomplish rehabilitation by modifying the rights of secured claim holders, curing or waiving defaults and managing secured claims through Chapter 13 plans.

The possessory nature of a pawnbroker's security interest does not change application of *Glenn* to claims secured by pawn. Section 1322(b) does not limit a Chapter 13 debtor's powers to deal with secured claims based on the form of security interest. With respect to other forms of security interests in personal property, that the secured claim holder has taken possession of its collateral before the filing of a Chapter 13 petition does not terminate the debtor's right to deal with the claim under § 1322(b)(2), (3) or (5). For example, prepetition repossession of a debtor's car does not preclude the use of § 1322(b) to manage the claim secured by the car through a Chapter 13 plan. *See Robinson v. Ford Motor Credit Co.*, 36 B.R. 35 (Bankr.E.D.Ark.1983) (repossessed car remains property of the estate and can be recovered by the debtor). *Accord Associ-*

---

4. Even a superficial comparison of the pawnbroker statutes from the four states of the Sixth Circuit reveals the same fundamental differences encountered by the Sixth Circuit in its review of state mortgage foreclosure law in *Glenn*. For example, under the Kentucky pawnbroker's statute, KY.REV.STAT.ANN. § 226.010 *et seq.*, a pawnbroker may sell any pawned article after the expiration of 90 days from the maturity of the loan, provided that not less than 10 days' notice is given. Under Michigan law, the borrower "at any time prior to the sale, may pay or tender to the pawnbroker the debt and interest and charges thereon, together with the cost of advertising the sale," and reacquire title

to and possession of the pledged property. MICH.STAT.ANN. § 446.211. Under Michigan law, no pawnbroker may sell pawned or pledged property for six months after the pawnbroker obtained possession, and then the sale must be a public auction to the highest bidder. MICH.STAT.ANN. § 446.210. Under Ohio law, the pledgor of personal property may redeem within two months from the date on which the last payment of the loan is due, and then must redeem within 30 days from the date of a notice, or the property is "forfeited" to the pledgee. OHIO REV.CODE ANN. § 4727.11. The Tennessee pawnbroker statute is described in section I above.

*ates Commercial Corp. v. Attinello,* 38 B.R. 609, 11 B.R.Ct.Dec. (CRR) 992 (Bankr. E.D.Pa.1984); *Tektronix Employees Fed. Credit Union v. Titel,* 37 B.R. 173 (Bankr. D.Ariz.1984); *General Motors Acceptance Corp. v. Radden,* 35 B.R. 821 (Bankr. E.D.Va.1983); *Willis v. Parks Chevrolet, Inc.,* 34 B.R. 451 (Bankr.M.D.N.C.1983). *See also Sininger v. Fulton (In re Sininger),* 84 B.R. 115 (Bankr.S.D.Ohio 1988) (money held by state court pursuant to prepetition attachment remains property of Chapter 13 estate and can be used by debtor).

Cash America's assertion that the 60–day extension of the contractual redemption period effected by § 108(b) of the Bankruptcy Code defines the extent of the debtor's powers under § 1322(b) is misguided. Section 108(b) is not exclusive of but is in addition to the powers of a Chapter 13 debtor under § 1322(b). Section 108(b) may empower a Chapter 13 debtor to exercise a state law or contractual right of redemption for an additional 60 days after the filing of a bankruptcy petition. Section 108(b) does not presume by words or construction to preclude a Chapter 13 debtor's right to modify the rights of claim holders under § 1322(b)(2) or to cure defaults or waive defaults under § 1322(b)(3) or (b)(5). The *Glenn* court recognized that statutory or contractual redemption rights may be cumulative of other rights of a Chapter 13 debtor. *See* 760 F.2d at 1441–42.

Not all circuits have embraced the Sixth Circuit's view in *Glenn. See, e.g., In re Roach,* 824 F.2d 1370, 1377 (3d Cir.1987) (entry of foreclosure judgment terminates debtor's right to cure mortgage contract, because debtor has no interest left in property under state law); *Goldberg v. Tynan (In re Tynan),* 773 F.2d 177 (7th Cir.1985) (only interest debtor has in mortgaged property under Illinois law after foreclosure sale is equity of redemption; debtor may not cure default in mortgage contract). In other circuits, bankruptcy courts have interpreted state pawnbroker statutes to preclude Chapter 13 debtors to cure defaults after expiration of contractual reacquisition periods. *See, e.g., Evans v. Mid–City Jewelry, Inc. (In re Evans),* 22 B.R.

608 (Bankr.D.Neb.1982) (when reacquisition period on pawned goods expired under state law prior to bankruptcy filing, debtor lost right to reacquire goods); *In re Jackson,* 133 B.R. 541 (Bankr.W.D.Okla.1991) (when reacquisition period expired under state law prior to Chapter 13 filing, debtor no longer had property interest in pawned goods). These cases proceed from assumptions that are contrary to *Glenn* and are not persuasive.

■ Applying *Glenn,* Dunlap and Mitchell retain their rights under § 1322(b) with respect to pawned collateral until the pledged property has been sold or otherwise disposed of by the pawnbroker. Dunlap may manage the claim secured by her 1983 Cadillac Seville because Cash America has not disposed of the car. Mitchell may manage the claim secured by the camera and chain. Mitchell may not affect the claim originally secured by the necklace, because the necklace was sold before the petition.

## IV.

11 U.S.C. § 542 provides in part:

[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property of the value of such property, unless the property is of inconsequential value or benefit to the estate.

In *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court held that § 542(a) authorized turnover of property of the debtor seized prepetition by a creditor. *Whiting Pools,* 462 U.S. at 209, 103 S.Ct. at 2315. Although the Supreme Court did not address directly whether § 542(a) required turnover of property pledged to a creditor, a footnote in the opinion observes:

We do not decide whether any property of the debtor in which a third party holds a possessory interest independent of a creditor's remedies is subject to turnover

under § 542(a). For example, if property is pledged to the secured creditor so that the creditor has possession prior to any default, § 542(a) may not require turnover.

*Whiting Pools*, 462 U.S. at 206 n. 14, 103 S.Ct. at 2314 n. 14, *citing* 4 L. King, Collier on Bankruptcy § 541.08[9], p. 541–53 (15th ed. 1982).[5]

At least two courts have analyzed the footnote in *Whiting Pools* and concluded that § 542 permits recovery of pledged property. *Phillips v. Smith (In re Ayscue)*, 123 B.R. 28 (Bankr.E.D.Va.1990); *Leeling v. Smith (In re Leeling)*, 129 B.R. 637 (Bankr.D.Colo.1991). In *Ayscue*, the court determined that § 542 required turnover of stock pledged as security by a debtor. *Ayscue*, 123 B.R. at 30. Explaining footnote 14 in *Whiting Pools*, the *Ayscue* court observed that the Supreme Court's dictum was based on Collier's misapplication of a 1937 case decided under the former Bankruptcy Act, *In re Rogers*, 20 F.Supp. 120 (N.D.W.Va.1937). *Id.* at 30.

In *Rogers*, the court held that a holder of pledged securities could retain possession until full satisfaction of the debt for which the securities were pledged. *Rogers*, 20 F.Supp. at 131. The *Rogers* court stated:

> A pledge is a transfer merely of the possession of personal property, and not of the title, as security for the payment of some debt or the performance of some obligation by the pledgor, the pledgor retaining his title and the pledgee having only a special property in the property pledged, with power to retain it until the debt is paid or the obligation performed in accordance with the terms of the pledge contract, and with power to sell or otherwise dispose of it in case of default on the part of the pledgor, and the pledgor having the right to redeem at any time, in accordance with the terms of the contract.

*Rogers*, 20 F.Supp. at 128. Declining to follow *Rogers*, the court in *Ayscue* correctly pointed out that the definition of property of the estate is more expansive under § 541(a)(1) of the Code than under the pre-Code definition relied on in *Rogers*. *Ayscue*, 123 B.R. at 30. The *Ayscue* court noted that the legislative history behind § 542 "clarifies that § 541(a)(1) includes 'property recovered by the trustee under section 542 of proposed title 11, if the property recovered was merely out of possession of the debtor yet remained property of the debtor.'" *Id.* at 30, *citing* S.Rep. No. 989, 95th Cong., 2nd Sess. 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868.

In *Leeling*, the court followed *Ayscue* and determined that a promissory note pledged as collateral was property of the bankruptcy estate and subject to turnover. *Leeling*, 129 B.R. at 641. The *Leeling* court stated that possession of collateral prior to default did not entitle the creditor to treatment different than any other creditor holding a perfected security interest. *Id.* at 640. *See also In re Gerwer*, 898 F.2d 730, 734 (9th Cir.1990) (" ... [T]he turnover power cannot depend on who is in possession. The Internal Revenue Service, the creditor who was in possession in *Whiting Pools*, was forced to disgorge. An equitable interest is indeed normally not possessory. There is no requirement under section 542 'that the debtor hold a possessory interest.'").

■ In the Sixth Circuit, a Chapter 13 debtor has a property interest in pledged collateral sufficient to support the use of § 1322(b) until sale or other disposition of the collateral. Pawned property that has not been sold or disposed of at the petition is property that a Chapter 13 debtor may use under § 363, subject to the pawnbroker's right to adequate protection under § 361. *See* 11 U.S.C. § 363(e).[6] Section

---

5. Collier on Bankruptcy states, "[w]here there is a valid pledge the pledgor's estate succeeds to his power of redemption, but since the estate has no present possessory interest, turnover will not lie under section 542 and the estate is entitled to restoration of the pledged property or its proceeds only upon payment of the debtor or performance of the engagement." 4 L. King, Collier on Bankruptcy § 541.08[9], p. 541–57 (15th ed. 1989).

6. 11 U.S.C. § 363(e) provides:
   Notwithstanding any other provision of this section, at any time, on request of an entity

542 will support turnover of pledged collateral if the debtor satisfies § 363(e). *See In re Pester Refining Co.*, 845 F.2d 1476, 1485–86 (8th Cir.1988) (" ... 11 U.S.C. § 542(a) states that property of the bankruptcy estate that the trustee may use, sell, or lease under section 363 shall be delivered to the trustee ... The Bankruptcy Code has replaced [the creditor's] right to possession with other rights, such as the right to adequate protection.").

 Before a Chapter 13 debtor is entitled to turnover of pawned personal property, the debtor must provide adequate protection of the pawnbroker's possessory security interest. At the very least, adequate protection of a pawnbroker's possessory security interest includes insurance for the full amount of the secured claim, a substitute security interest perfected in a manner that would be effective under state law as a substitute for possession and confirmation of a plan that provides for payment of the pawnbroker's allowed secured claim consistent with § 1325(a)(5).

Both Mitchell and Dunlap have proposed Chapter 13 plans that provide full payment of the secured claims of Cash America. Neither Dunlap nor Mitchell has offered evidence that Cash America's collateral is protected by insurance. Neither Dunlap nor Mitchell has provided a perfected security interest to substitute for possession of the collateral by Cash America. Turnover is denied until all three conditions are satisfied.

An appropriate order will be entered.

## ORDER

For the reasons states in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED:

1. The objections to confirmation of the plans in these consolidated Chapter 13 cases are overruled;

2. Turnover of the necklace pawned by James and Catherine Mitchell is denied;

3. Turnover of the Cadillac Seville to Alice L. Dunlap and turnover of the camera and chain to James and Catherine Mitchell is granted conditioned that the debtors provide insurance for the full amount of the secured claims and provide a security interest perfected in a manner that would be effective under state law as a substitute for possession of the collateral.

IT IS SO ORDERED.

---

that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.