**In re Tracey S. BECKER, d/b/a Terrace Sleepytime Farm, Debtor.**

**Bankruptcy No. 397–12273–KL–12.**

United States Bankruptcy Court,
M.D. Tennessee.

March 12, 1998.

Laura A. Grifka, Miller & Associates, Nashville, TN, for Debtor.

Rodney M. Scott, Murfreesboro, TN, for Ron and Linda Brackin.

Henry E. Hildebrand, III, Nashville, TN, Chapter 12 Trustee.

### MEMORANDUM

ALETA A. TRAUGER, Bankruptcy Judge.

The court has before it the debtor's motion seeking to compel Ron and Linda Brackin to turn over eleven miniature horses and the original registration papers for nine of the horses. The motion is brought pursuant to 11 U.S.C. § 542 for turnover of property of the estate in the possession of a non-custodian.[1] The Brackins argue that the horses and papers are not property of the estate and that the debtor is attempting to force the assumption of an executory contract without

---

1. The motion also seeks to avoid a preference pursuant to 11 U.S.C. § 547. However, the request for expedited hearing related only to the turnover motion, and the Order setting the expedited hearing limited the hearing to the turnover motion.

complying with the Bankruptcy Code. They assert that if they are ordered to turn over the property, the debtor must provide adequate protection and reimburse them for the boarding fees and costs incurred since the Dickson County Sheriff's Department seized the horses and placed them in the Brackins' possession. Turnover will be granted, but only upon the filing of an agreed order setting forth what measure of adequate protection will be provided to the Brackins or, failing that, a ruling by the court on adequate protection.

## I

### Factual background

The debtor and Linda Brackin executed a contract on May 6, 1997, by which Linda Brackin sold eleven miniature horses, with their registration papers, to the debtor for $12,000. Pursuant to the contract, the debtor agreed to make a $1,000 down payment when she picked up the horses and, thereafter, make monthly payments of $1,000 for eleven months. The debtor would receive one original set of registration papers each time she made a monthly payment "so that when the final payment is recieved [sic] by the seller, the buyer will have obtained all the paperwork necessary to complete this contract."

The debtor picked up the horses and made the $1,000 down payment on May 6, 1997, but failed to make any of the monthly payments. The Brackins commenced a breach of contract action against the debtor and her husband, Jack Webb, and an Agreed Order was

entered in that case on July 21, 1997. The Order states that the Brackins sold eleven miniature horses to the debtor and her husband, Jack Webb, and requires the debtor and Jack Webb to pay $2,000 of the sale price by July 18, 1997, and to begin making the $1,000 monthly payments on August 5, 1997. (Ex. B.) By check dated July 18, 1997, the debtor made the $2,000 payment. (Ex. A.) Pursuant to that payment, Ms. Brackin sent two sets of original registration papers to Jack Webb by certified mail. The monthly payments, however, were never made and nine original sets of papers remain in the Brackins' possession.

The Brackins filed motions for contempt and for default and, on September 16, 1997, obtained a judgment against the debtor and Jack Webb for the $9,000 balance owed on the sale price, plus a $1,500 attorney fee. (Ex. 1.) An Execution and Garnishment was issued on December 2, 1997, (Ex. 2), and the Dickson County Sheriff's Department seized eleven miniature horses[2] from the debtor on or about December 5, 1997. Since then, the Sheriff's Department has been boarding the horses with the Brackins, because it has no facilities of its own for such. No execution sale has taken place.

The debtor filed her Chapter 12 petition on December 30, 1997, and filed the present Motion for Turnover of Property[3] against Linda and Ron Brackin on January 20, 1998. Pursuant to the debtor's request for an expedited hearing on the turnover motion, an evidentiary hearing was held on January 26, 1998. The motion seeks turnover of the nine sets of registration papers[4] currently in the

---

2. Ten of the eleven horses seized were acquired by the debtor from the Brackins pursuant to the May 6, 1997 contract.

3. Technically, turnover must be sought in an adversary proceeding. See FED.R.BANKR.P. 7001. However, the Brackins have not raised that issue and, therefore, have impliedly consented to a resolution of this dispute on motion, a practice allowed in this district.

4. The debtor gave the following explanation of why obtaining the registration papers is important:

    The horses are all pedigreed like a registered dog. Their blood lines are very important to

their value. So are the blood lines of the father or the stud that you use to breed them to. Some of the horses that they have taken back are bred to my stud that I still have at my property. I can't file the stud reports with the registration organizations on those mares or on the mares that I still have on my premises that are bred to the stud that they took because I don't have the paperwork for them dated the day that I actually purchased and took possession of those horses because they never provided me with that paperwork. Without the paperwork, I can't register the babies and I can't register this particular portion of the horses in my name. Therefore, the offspring would be valued at just a couple of hundred dollars versus several thousand dollars.

Brackins' possession and of the horses seized by the Dickson County Sheriff's Department. The Sheriff's Department was not named as a respondent in the motion.

■ The Brackins argue that the horses and papers are not property of the estate for two reasons. First, the Brackins assert that the debtor misrepresented her identity as Tracey Webb when she executed the contract[5] and, therefore, she "never obtained any property interest in the subject horses." (Resp. to Debtor's Mot. at 2.) And second, ownership never changed hands because the registration papers were not executed. As to the first assertion, the evidence does not support that the debtor executed the contract using a false identity. The proof was uncontroverted that she has been married to Jack Webb since April 1996 and that Tracey Webb is her married name. As to the second, despite the wording on the registration papers,[6] Tennessee law does not require the execution of registration papers for ownership of miniature horses to change hands. *See Lee v. Cox*, 18 U.C.C. Rep. Serv. 807, 810 (M.D.Tenn.1976); *see also Estate of A.R. Levis v. Blankinship–Cooper, Inc. (In re Blankinship–Cooper, Inc.)*, 43 B.R. 231, 233–35 (Bankr.N.D.Tex.1984). Two orders from the state court case recite that the Brackins

"sold" the horses to the debtor and her husband. (Exs. 1 & B.) The debtor testified that she has sold horses without registration papers. Even Ms. Brackin testified that if one of the horses had died during the payment period (before the registration papers were executed), the debtor would still have had to pay for it.

■ The Brackins also argue that the contract with the debtor is executory and, by means of the turnover motion, she is attempting to "force completion" of the executory contract without satisfying the provisions of 11 U.S.C. § 365(b)(1). (Resp. to Debtor's Mot. at 2–3.) This argument, however, is without merit. The contract is not executory. *See Chattanooga Mem'l Park v. Still (In re Jolly)*, 574 F.2d 349, 350 (6th Cir.)(holding under the Bankruptcy Act that contract to purchase burial plots was no longer executory where the debtor had breached and the seller had obtained a default judgment for damages in state court prepetition), *cert. denied*, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978).[7]

The remaining issues to be resolved here are these:

1. Whether the horses and registration papers constitute property of the estate.

---

**5.** The debtor executed the contract using the name Tracey Webb. She filed her petition under the name Tracey S. Becker, d/b/a Terrace Sleepytime Farm. Her attorney explained at the January 26, 1998 hearing that the debtor mistakenly failed to list her married name, Tracey Webb, on her petition and that the petition would be amended. An amendment to the petition adding the debtor's married name was filed February 2, 1998.

**6.** The Transfer of Ownership section of the registration papers provides: "NOTICE TO BUYER–You do NOT have official title to this animal until the transfer of same has been processed by the American Miniature Horse Registry . . ., and the certificate is duly recorded in your name. For your protection, insist that the transfer be executed immediately." (Ex. D.)

**7.** The Sixth Circuit in *Jolly* reasoned that the holder of an executory contract has no cause of action because there has been no breach and, therefore, no performance is due. 574 F.2d at 352. If, however, the contract is breached and a judgment has been obtained, "the precise goal of the [executory contract] provisions [under the Act] has already been accomplished. The claim

has been reduced to money damages which can be included in the Wage Earner Plan . . . ." *Id.*

*Jolly* was a case under Chapter XIII of the Bankruptcy Act of 1898, as amended in 1938. *See* Act of June 22, 1938, Pub.L. No. 696, ch. 575, §§ 606(5), 642, 646(6), 52 Stat. 840, 930, 933–34 (enacted as 11 U.S.C. §§ 1006(5), 1042, 1046(6)), *reprinted in* COLLIER ON BANKRUPTCY app. A, pt. 3–193, –198–99 (15th ed. rev.1997), *repealed by* Act of Nov. 6, 1978, Pub.L. No. 95–598, § 401, 92 Stat. 2549, 2682. Since the enactment of the Bankruptcy Code in 1978, at least one other bankruptcy court has relied on *Jolly* for the proposition that a contract reduced to judgment no longer remains executory. *In re Roxse Homes, Inc.*, 74 B.R. 810, 816 (Bankr.D.Mass. 1987) (relying on *Jolly* to find a sales agreement that had been reduced to judgment for specific performance could no longer be considered executory), *aff'd sub nom. Roxse Homes, Inc. v. Roxse Homes Ltd. Partnership*, 83 B.R. 185 (D.Mass.), *aff'd*, 860 F.2d 1072 (1st Cir.1988). This court finds that the holding in *Jolly* applies to § 365 of the Bankruptcy Code which, pursuant to 11 U.S.C. § 103(a), governs cases filed under Chapter 12.

2. Whether the court may compel the Brackins to turn over the horses and registration papers.

3. Whether and to what extent turnover should be conditioned upon adequate protection.

## II

### Turnover of the horses

The Brackins are in possession of the horses as bailees for the Sheriff's Department. *See C.T.C. Inv. Co. v. Daniel Boone Coal Corp.*, 58 F.2d 305, 315–16 (E.D.Ky.1931); *In re John Galt Energy, Inc.*, 75 B.R. 658, 665 (Bankr.E.D.N.Y.1987); 30 AM. JUR. 2D *Executions & Enforcement of Judgments* § 264 (1994). As bailees, they are "an entity, other than a custodian, in possession, custody, or control, during the case, of property" under § 542. *See Vescovo v. First State Bank (In re Vescovo)*, 125 B.R. 468, 471, 473 (Bankr. W.D.Tex.1990). For § 542 to be applicable and turnover, therefore, mandated, the "property" must be property of the estate. *See* 11 U.S.C. §§ 363(b)(1), 542(a). The Brackins assert that the horses are not property of the estate.

A determination of whether the horses constitute property of the estate and, therefore, are subject to turnover must begin with the U.S. Supreme Court's holding in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The Court held there that property seized by the IRS prepetition constituted property of the estate and was subject to turnover, unless the property had been sold to a third party or ownership of the property had been transferred to the IRS. *Id.* at 209–12, 103 S.Ct. at 2316–17, 76 L.Ed.2d at 525–26; *accord National City Bank v. Elliott (In re Elliott)*, 214 B.R. 148, 150–52 (6th Cir. BAP 1997); *see also* 11 U.S.C. § 541(a)(1) (defining property of the estate to include, subject to certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case"). The horses have not been sold, so we must determine whether their seizure transferred ownership to the Sheriff's Department or to the Brackins.

■ State law determines whether a prepetition seizure transfers ownership. *See Elliott*, 214 B.R. at 152. Under Tennessee law, "[a] levy on personal property results in the actual divestiture of the judgment debtor's title. It places the debtor's personal property in the custody of the law, and the sheriff acquires a special interest in the property." *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 444 (Tenn.Ct.App.1994) (citations omitted). The title acquired by the sheriff, however, is "not absolute, but only for the purpose of satisfying the execution debt." *Herman v. Katz*, 101 Tenn. 118, 47 S.W. 86, 88 (1897). So under Tennessee law, the sheriff acquires some ownership interest, but the judgment creditor (the Brackins here) and certainly a bailee of the sheriff (again here, the Brackins) acquire none.[8] *See* 8A AM. JUR. 2D *Bailments* § 18 (1997) ("It is characteristic of a bailment that the bailee has possession of the property and title or ownership remains in the bailor . . . .").

What is more, although divested of title, the judgment debtor still retains some ownership interest in the seized property. A judgment debtor in Tennessee has the right to satisfy a judgment prior to an execution sale and obtain possession of the seized property. *See Herman*, 47 S.W. at 88 ("[T]he mere payment of the debt by the debtor operates as a discharge of the execution, and causes the possession to revert instanter to the debtor, without a decree or conveyance."); *Brown v. Allen*, 40 Tenn. (3 Head) 429, 431 (1859). This is the right of redemption, and it exists until the property is sold at an execution sale.

■ The horses seized here pursuant to a state court execution are property of the estate because they have not been sold to a third party and because their absolute ownership has not been transferred to the Sheriff's Department or to the Brackins. *See Whiting Pools*, 462 U.S. at 211, 103 S.Ct. at 2317, 76 L.Ed.2d at 526; *cf. In re Karis*, 208

---

8. The judgment creditor does acquire an execution lien. *See* TENN. CODE ANN. § 25–5–103 (Mi-chie 1980); *Keep Fresh Filters, Inc.*, 888 S.W.2d at 443–44.

B.R. 913, 917 (Bankr.W.D.Wis.1997) (concluding under Wisconsin law that debtors had no right of redemption after creditor seized livestock based on foreclosure and replevin judgment and, therefore, debtors' rights in livestock were eliminated upon seizure).

Because the horses are property of the estate and the Brackins are in possession of them as bailees, the court finds that the horses are subject to turnover pursuant to § 542. It would have been appropriate and desirable for the debtor to have made the sheriff an additional respondent to her motion for turnover,[9] since he has official custody and constructive possession of the horses. However, the court does not find the failure to do so fatal.

### III

### Turnover of the registration papers

■ Under the contract, the registration papers were left in the possession of the Brackins until payment was received for each horse. This arrangement constitutes a pledge under Tennessee law. *Lee*, 18 U.C.C. Rep.

Serv. at 810. Nine sets of the papers presently remain in the Brackins' possession. Since default, the debtor has had the right to redeem those papers.[10] There is no evidence that such right has been terminated in compliance with Tennessee law. *See* TENN. CODE ANN. §§ 47–9–504, –505, –506 (Michie 1996). The papers, therefore, are property of the estate under § 541(a)(1) that may be used, sold, or leased under § 363(b)(1).[11] *See Dunlap v. Cash Am. Pawn (In re Dunlap)*, 143 B.R. 859, 863–65 (Bankr.M.D.Tenn.1992), *rev'd on other grounds*, 158 B.R. 724 (M.D.Tenn.1993); *Leeling v. Smith (In re Leeling)*, 129 B.R. 637, 640–41 (Bankr. D.Colo.1991); *Phillips v. Smith (In re Ayscue)*, 123 B.R. 28, 29–30 (Bankr.E.D.Va. 1990). The conditions of § 542(a) being met, the Brackins will be ordered to turn over the nine sets of registration papers to the debtor.

### IV

### Adequate protection

■ At a minimum, turnover must be conditioned upon adequate protection of the Brackins' interest in the horses.[12] *See Whiting Pools*, 462 U.S. at 201–02, 211–12, 103

---

**9.** This might have necessitated the addition of 11 U.S.C. § 543 ("Turnover of property by a custodian") as a ground for relief. *See Skinner v. First Union Nat'l Bank (In re Skinner)*, 213 B.R. 335, 337–41 (Bankr.W.D.Tenn.1997). At any rate, a Dickson County Sheriff's Deputy did testify at the hearing pursuant to a subpoena issued by the Brackins.

**10.** Because the parties intended to create a security interest in the registration papers when they executed the contract, the right of redemption established by Article 9 of Tennessee's version of the U.C.C. is applicable here. *See* TENN. CODE ANN. §§ 47–9–102, –506 (Michie 1996).

**11.** This court and others have declined to follow the dicta in *Whiting Pools* that § 542(a) "may not require turnover" when "property is pledged to the secured creditor so that the creditor has possession prior to any default," 462 U.S. at 206–07 n. 14, 103 S.Ct. at 2314 n. 14, 76 L.Ed.2d at 523 n. 14 (citing 4 COLLIER ON BANKRUPTCY ¶ 541.08[9], at 541–53 (15th ed.1982)). *See Phillips v. Smith (In re Ayscue)*, 123 B.R. 28, 29–30 (Bankr.E.D.Va.1990) (concluding that pledged property was subject to turnover under § 542(a) and not following *Whiting Pools'* dicta because it is based on *Collier's* "pre-code concept of property of the estate, [which] contrasts sharply with the bankruptcy code's treatment of other claims

secured by property in the possession of a secured creditor"); *Leeling v. Smith (In re Leeling)*, 129 B.R. 637, 640–41 (Bankr.D.Colo.1991) (following *Ayscue*); *Dunlap v. Cash Am. Pawn (In re Dunlap)*, 143 B.R. 859, 863–65 (Bankr. M.D.Tenn.1992) (following *Leeling* and *Ayscue*), *rev'd on other grounds*, 158 B.R. 724 (M.D.Tenn. 1993). The reason the creditor is in possession of the collateral, therefore, is not dispositive of the debtor's motion for turnover. *But see Lee*, 18 U.C.C. Rep. Serv. at 810 (relying on the statement in *Collier* that *Whiting Pools* later used to support its dicta); *Wildlife Ctr., Inc. v. Fasig Tipton Ky., Inc. (In re Wildlife Ctr., Inc.)*, 102 B.R. 321, 325–26 (Bankr.E.D.N.Y.1989) (following *Lee* without discussing *Whiting Pools'* dicta and the validity of *Collier's* statement).

**12.** If the debtor brings a proper preference action pursuant to FED.R.BANKR.P. 7001 and prevails, the requirement of adequate protection will be revisited. The court makes no finding with respect to the complex issue of whether the Brackins hold a properly perfected security interest in the registration papers and whether they, therefore, are entitled to adequate protection of that interest. *Compare Lee*, 18 U.C.C. Rep. Serv. at 809–10, *with Blankinship–Cooper, Inc.*, 43 B.R. at 233–37, *and Shields v. Equine Capital Corp.*, 607 So.2d 468, 471–73 (Fla.Dist.Ct.App.1992).

S.Ct. at 2312, 2317, 76 L.Ed.2d at 520, 526; *Gouveia v. Internal Revenue Serv. (In re Quality Health Care)*, 215 B.R. 543, 581 (Bankr.N.D.Ind.1997); *In re Young,* 193 B.R. 620, 626 (Bankr.D.C.1996); *Dunlap*, 143 B.R. at 865. Neither the Brackins nor the debtor has proposed means of adequately protecting that interest. Turnover of the horses and the registration papers shall be conditioned upon the filing of an agreed order, signed by the debtor, the Brackins, and the Chapter 12 Trustee, setting forth what measure of adequate protection will be provided to the Brackins. If the parties cannot agree, upon motion, the court will rule on adequate protection.

The Brackins requested in their response that the debtor be required to pay to them the boarding and transport fees for the seized horses, in the event that turnover is awarded. The Brackins, as plaintiffs in the state court action who caused the "execution to be issued for levy of personal property," are required to "pay the cost incurred by the court, sheriff, or other officers for transportation of the attached property to a storage facility, storage fees, advertisement fees, court costs, and any other necessary cost incurred by such officials." TENN. CODE ANN. § 26–3–117 (Michie 1980). Such costs, however, may be recovered from the execution debtor (the debtor herein). *Id.* The Brackins, therefore, are directed to file a proof of claim and, where applicable, a request under 11 U.S.C. § 503 for recovery of such costs.

An appropriate order will be entered.

### ORDER

For the reasons stated in the Memorandum filed herewith, the debtor's Motion for Turnover of Property filed January 20, 1998, is **GRANTED**, conditioned upon the filing of an agreed order, signed by the debtor, the Brackins, and the Chapter 12 Trustee, setting forth what measure of adequate protection will be provided to the Brackins. If no agreement can be reached, turnover shall await a ruling by the court on adequate protection.