In re David V. YOUNG, Debtor.

Bankruptcy No. 95–567.

United States Bankruptcy Court,
District of Columbia.

March 13, 1996.

Madeline A. Trainor, Tyler, Bartl, Burke &
Albert, Alexandria, VA, for creditor.

David V. Young, Washington, DC.

Brad D'Amico, Alexandria, VA, for debtor.

Cynthia A. Niklas, Washington, DC.

### FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON DEBTOR'S MOTION FOR CONTEMPT

S. MARTIN TEEL, Jr., Bankruptcy
Judge.

The Debtor's Motion for Contempt for Violations of Automatic Stay seeks to hold his secured creditor in contempt for allegedly violating the proscription of 11 U.S.C. § 362(a)(3) against, among other things, acts "to exercise control over property of the estate." Specifically, the alleged contempt is based on the creditor's admitted failure to return its collateral, a car, which the creditor repossessed before the petition was filed. The court determines that such a failure does not violate § 362(a)(3) and will deny the motion.

I

The debtor owns a Toyota vehicle. Toyota Motor Credit Corporation ("Toyota Motor") holds a security interest against the vehicle to secure the payment of amounts owed under the retail installment contract whereby the debtor purchased the vehicle. (Toyota

Motor holds the installment sales contract as the assignee of the car dealership, Kline Tysons Toyota, Inc.) The debtor fell into arrears in making payments as required by the terms of the contract. Pursuant to its remedies under the contract, on April 13, 1995, Toyota Motor repossessed the vehicle. Subsequently, on May 15, 1995, the debtor filed a chapter 13 petition.

The contract provided that the debtor's right to redeem "will end when the vehicle is sold or when the Creditor enters into a contract for its disposition, whichever occurs first." The contract further provided that

> The Creditor will send you a written notice of the sale at least 10 days before selling the vehicle. If you do not redeem the vehicle by the date on the notice, the Creditor can sell it.

Toyota Motor has alleged that the debtor's contractual remedy of redemption expired on May 2, 1995, as outlined in a notice of redemption mailed to the debtor on or about April 14, 1995. However, Toyota Motor did not introduce the notice into evidence and presented no evidence that Toyota Motor had sold the vehicle or entered into a contract for its sale. The court must assume that the notice was simply the 10–day warning the contract required the creditor to issue before it could proceed to sell the vehicle. Under the terms of the contract, Toyota Motor was free to sell the vehicle once the notice period had expired.

■ Although Toyota Motor may have been free to sell the vehicle, this did not place title to the vehicle in Toyota Motor. Title still rested in the debtor with the right to redeem the vehicle at any time prior to the only two events specified by the contract as terminating the right to redeem: sale of the vehicle or Toyota Motor's entering into a contract for sale. The mere seizure of the vehicle did not suffice to destroy the debtor's title as long as the debtor had a right to redeem. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

The debtor filed a motion for contempt against Toyota Motor for violation of the automatic stay under the Bankruptcy Code for Toyota Motor's continued retention of the vehicle, which is the issue under consideration here.

■ Section 362(a)(3) of the Bankruptcy Code prohibits a creditor postpetition from taking "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Clearly, the creditor in this case did not take a postpetition act to "obtain possession" because it rightfully obtained possession *pre*petition. Rather, the question raised here is whether simply maintaining the status quo postpetition by not affirmatively returning the vehicle to the debtor is an act to "exercise control" in violation of § 362(a)(3). In other words, is a mere failure to release possession of a repossessed vehicle postpetition an exercise of control over the vehicle, particularly in circumstances where the creditor is entitled to adequate protection of its interest in the property?

For reasons explained below, the court concludes that the creditor is entitled to retain possession of the property pending resolution of the request for adequate protection of its interest in the property and thus is not subject to sanctions.

## II

Critical to ascertaining the proper interpretation of § 362(a)(3) is an examination of the provisions of the Bankruptcy Code governing use of property and turnover of property. The debtor generally may use property of the estate in the ordinary course of the debtor's business. 11 U.S.C. § 363(c)(1). However, on request of a secured creditor, the court must condition such use on the debtor's furnishing adequate protection. 11 U.S.C. § 363(e).[1] In turn, under § 542(a) of the Code, a creditor "in possession, custody or control ... of property that the trustee

---

1.  Section 363(e) provides:
    at any time, on request of an entity that has an interest in property used ... or proposed to be used ... by the trustee, the court with or

without hearing, shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest.

may use, sell or lease under section 363 of this title, shall deliver to the trustee ... such property ... unless such property is of inconsequential value or benefit to the estate."[2]

In *Whiting Pools*, the debtor sought a turnover order against the Internal Revenue Service ("IRS"). The court of appeals upheld the bankruptcy court's power to order turnover. In seeking reversal of the court of appeals, the IRS urged that its prepetition seizure by tax levy removed the property from the reach of the debtor's reorganization efforts. In disagreeing, the Supreme Court determined that § 542(a) mandates that a secured creditor in possession of the debtor's property seized prepetition must turn over that property to the trustee if the trustee is authorized to use, sell or lease the property under § 363. *Whiting Pools*, 462 U.S. at 203–207, 103 S.Ct. at 2312–2315. The Court reasoned that "§ 542 modifies the procedural rights available to creditors to protect and satisfy their liens.... In effect, § 542 grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings." *Id.* at 206–207, 103 S.Ct. at 2314 (footnotes and citations omitted).

Significant to the issue in this case, the Court went on to state that in return for giving up those possessory rights, "[t]he Bankruptcy Code provides secured creditors various rights, including the rights to adequate protection, and these rights replace the protection afforded by possession." *Id.* at 207, 103 S.Ct. at 2315. In this regard, the Court concluded that "[t]he IRS, under § 363(e), remains entitled to adequate protection for its interests.... Section 542(a) simply requires the Service to seek protection of its interest according to the congressionally established bankruptcy procedures,

rather than by withholding the seized property from the debtor's efforts to reorganize." *Id.* at 212, 103 S.Ct. at 2317.

The relevant question not directly addressed by the Court in *Whiting Pools* is whether the secured creditor must immediately turn over the property, thus making § 542 self-executing, or may hold it until the question of adequate protection pursuant to § 363 is resolved. However, the Court's recitation of the case's procedural history indicates that the Supreme Court was well aware of and did not question the propriety of the common procedure[3] whereby the secured creditor would be permitted to retain the property until adequate protection was proven by the debtor. After quoting the language of § 363(e), the Court noted that the "[bankruptcy] court directed the IRS to turn the property over to Whiting *on the condition* that Whiting provide the Service with specified protection for its interests." *Whiting Pools*, 462 U.S. at 201, 103 S.Ct. at 2311 (emphasis added). "Pursuant to this section, the Bankruptcy Court set the following conditions to protect the tax lien: Whiting was to pay the Service $20,000 *before the turnover occurred....*" *Id.* at 201 n. 7, 103 S.Ct. at 2312 n. 7 (emphasis added). The Court further noted that the court of appeals upheld the bankruptcy court and "remanded the case for reconsideration of the adequacy of the Bankruptcy Court's protection conditions." *Id.* at 201, 103 S.Ct. at 2312. The Supreme Court made no further comment on the bankruptcy court's procedural handling of the case or the court or appeals' remand order.

Accordingly, the Court's decision in *Whiting Pools* cannot be read as holding anything more than that a bankruptcy court may invoke § 542(a) to order the IRS to turn over property seized by tax levy.[4] None of the courts involved in *Whiting Pools* intimated

---

**2.** Section 542(a)'s alternative provision for turnover of property exempt under § 522 is inapplicable here because pursuant to § 522(c)(2) Toyota Motor's secured debt is unaffected by the debtor's exemptions.

**3.** At the time of the decision in *Whiting Pools*, it was common practice to condition turnover orders on proof of adequate protection. *See, e.g., In re Purbeck & Assoc., Ltd.,* 12 B.R. 406, 408

(Bankr.D.Conn.1981) and cases cited *infra* part V.B.

**4.** Significantly, however, the Court did discuss the pre-Code practice under Chapter X of the Bankruptcy Act of the trustee's having to obtain an order of the court in order to obtain turnover of encumbered property. *See infra* part V.B.

that turnover duties under § 542(a) could be self-executing in the face of a request for proof of adequate protection.

## III

Some would argue that this practice of retaining the property during the pendency of the resolution of the adequate protection issue was barred by the 1984 amendments to § 362(a)(3) which stayed "any act ... to *exercise control* over property of the estate." (Emphasis added.) This amending language was added to the then existing restriction under § 362(a)(3) which stayed "any act to *obtain possession* of property of the estate or of property from the estate...." (Emphasis added.) In amending § 362(a)(3), Congress gave no explanation of its intent.

■ As suggested, the 1984 language forbidding an act to exercise control over property has been interpreted by some courts to mean that any postpetition retention of the debtor's property violates the automatic stay and is, indeed, sanctionable. *See In re Knaus*, 889 F.2d 773 (8th Cir.1989) (duty to return property arises upon the filing of petition); *Carr v. Security Savings & Loan Association*, 130 B.R. 434 (D.N.J.1991) (creditor sanctioned for not turning over property despite alleged bad faith of petition); *In re Coats*, 168 B.R. 159 (Bankr.S.D.Tex.1993); *In re Ryan*, 183 B.R. 288 (M.D.Fla.1995).

> The principle is simply this: that a person holding property of a debtor who files bankruptcy proceedings becomes obligated, upon discovering the existence of the bankruptcy proceedings, to return that property to the debtor (in chapter 11 or 13 proceedings) or his trustee (in chapter 7 proceedings). Otherwise, if persons who

could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced. The general creditors, for whose benefit the return of property is sought, would have needlessly to bear the cost of its return. And those who unjustly retain possession of such property might do so with impunity.

*In re Knaus*, 889 F.2d at 775.[5]

In contrast, other courts have rejected the *Knaus* approach, reasoning that § 362(a)(3) *freezes* the status quo on the filing of the petition rather than mandates affirmative action by the creditor in possession of property seized prepetition to return it immediately.[6] *In re Richardson*, 135 B.R. 256 (Bankr. E.D.Tex.1992); *cf. In re Deiss*, 166 B.R. 92 (Bankr.S.D.Tex.1994) (creditor entitled to adequate protection before turnover); *In re Najafi*, 154 B.R. 185, 194–95 (Bankr. E.D.Penn.1993) (same). *See also In re Briggs*, 143 B.R. 438, 448 n. 15 (Bankr. E.D.Mich.1992) (dicta rejecting *Knaus* ).

> The effect of the stay is to freeze the status quo. To the extent that a creditor fails to desist in these collection attempts and attempts to exercise control over property of the estate post-petition, such creditor can be sanctioned pursuant to § 362(h). However, this provision for creditors who affirmatively act in violation of the stay post-petition can not be extrapolated to punish creditors who, while legally seizing the property of the estate pre-petition, failed to return this property immediately

5. The holding in *In re Knaus* has been followed by numerous courts imposing sanctions for a creditor's knowing failure to return property seized *post* petition. *See In re Abrams,* 127 B.R. 239 (9th Cir.1991); *In re Putnam,* 167 B.R. 737 (Bankr.D.N.H.1994). The court finds these cases inapposite because the creditor's *post*petition (rather than *pre*petition) seizure of the debtor's property in violation of the automatic stay is void *ab initio* and thus is no basis upon which to demand adequate protection. *In re Richardson,* 135 B.R. 256, 258 (Bankr.E.D.Tex.1992); *but see In re Knaus,* 889 F.2d at 775 (dicta).

6. No guidance can be found in *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), upholding a bank's right to place an administrative hold on the debtor's bank account in order to protect the bank's setoff rights. The analysis in *Strumpf* is distinguishable from this case because *Strumpf* deals with issues of setoff rather than a creditor's right to retain possession of the debtor's repossessed property which is not subject to a creditor's remedy of setoff as is a bank account. *See Carr v. Security Savings & Loan Assoc.,* 130 B.R. at 437.

to the debtor post-petition. In maintaining the seized property in the status it enjoyed just before the filing of debtor's petition, a creditor is merely complying with the spirit of the § 362 freeze.

*In re Richardson,* 135 B.R. at 258–59 (footnote omitted).

In espousing the status quo approach, the court in *Richardson* distinguished the contrary authority in the Eighth Circuit's decision in *Knaus* on the grounds that *Knaus* failed to address the creditor's entitlement to proof of adequate protection before the seized property is turned over. *See id.* at 259. *Richardson* distinguishes *Carr* on similar grounds—the creditor in that case had demanded and received proof of insurance (and thus adequate protection) from the debtor and yet still refused to turn over the property. *See id. Richardson* and the other courts supporting the status quo approach argue that where there is *no* proof of adequate protection, "prior to the turnover of property, the rights of a creditor must be adequately protected." *Id.*

### IV

■ This court rejects the *Knaus* court's (and its progeny's) interpretation of the amendment to § 362(a)(3) which requires immediate turnover by the secured creditor possessing property rightfully seized prepetition. At best, as will be discussed below, the meaning of the Code's restriction of an act "to exercise control" is ambiguous, and the *Knaus* court's analysis is too great a departure from traditional bankruptcy practice for this court to adopt that analysis without some legislative history endorsing such a dramatic change.

This is not a case controlled by *United States v. Ron Pair Enterp., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), where the Supreme Court held that where the statutory scheme is coherent and consistent, there is no need for a court to inquire

beyond the plain language. Rather, the ambiguity in the language in § 362(a)(3) requires this court to apply the Court's long held rule that "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (quoting *Emil v. Hanley,* 318 U.S. 515, 521, 63 S.Ct. 687, 690, 87 L.Ed. 954 (1943)). Accordingly, "the Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Id.* (citations omitted); *see Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990).

■ That § 362(a)(3) is susceptible of a plausible interpretation contrary to that in *Knaus* is readily demonstrated. While each of the words "exercise" and "control" is clearly defined by Webster's,[7] the significance of the phrase "to exercise control" in the Code is, at best, ambiguous, as evidenced by the split of authority cited above. And, absent any legislative history, Congress's intent in amending the Code to restrict such an act is equally undivinable. The turnover provision of § 542(a) applies to property in the "possession, custody or control" of a creditor. Similarly, § 362(a)(3) restricts both an act to "obtain possession" of the property and an act to "exercise control" over the property. Courts must give meaning to all words in the statute. *Negonsott v. Samuels,* 507 U.S. 99, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). Accordingly, Congress must have thought that "control" differs from "possession" or "custody."

In addressing the question of possession, the Code expressly restricts only *obtaining* possession of the property, rather than the passive act of simply continuing to possess it.

---

7. Webster's Dictionary defines the verb "control" in relevant part as "to exercise restraining or directing influence over: REGULATE, CURB ... DOMINATE, RULE: have power over...." The noun "control" is "the act or fact of controlling ...: power or authority to guide or manage: directing or restraining domination ... RE-

STRAINT, RESERVE ... a means or method of controlling." "Exercise" is defined by Webster's in relevant part as "to bring into play: make effective in action ...: bring to bear: EXERT...." Webster's New International Dictionary 496–7, 795 (3d ed. 1981).

In contrast to the act of passively retaining possession, the prohibited act of exercising control implies a more affirmative act by the creditor. As the Webster's definition indicates, the word exercise connotes the positive acts of bringing into play, making effective in action, bringing to bear, exerting. One commentator has commented that had Congress intended the amendment to § 362(a)(3) to require immediate turnover, "more passive language such as *'retain* control' would be found in the revision to Section 362(a)(3) of the Code." *See* John C. Chobot, Some Bankruptcy Stay Metes and Bounds, 99 Com.L.J. 301, 309 (1994) (emphasis added). By the same logic, if Congress intended to prohibit creditors from holding property seized prepetition, it also could have barred an act to "retain possession." Read in this context, the prohibition against an act to exercise control does not reach the passive act of continuing to possess property.

The court concludes that the meaning of "exercise control" is ambiguous, at best.

### V

This court finds the *Knaus* court's resolution of this ambiguity unsatisfactory because that court's interpretation leads to an inconsistent and illogical statutory scheme and would result in a dramatic shift in pre-Code and pre-amendment practice.

### A

The effect of *Knaus* court's interpretation of § 362(a)(3) is completely to prevent creditors from retaining possession of seized property sought by the trustee. Procedurally, under the *Knaus* approach, the only appropriate non-sanctionable course of action for the secured creditor in possession of property of the debtor seized prepetition is to turn over the property to the estate immediately and thus waive the right to assert its defenses to turnover under § 542(a) until *after the property has been turned over to the trustee* pursuant to a motion for relief from stay under § 362(d) or a motion for adequate

protection under § 363(e). *See In re Ryan,* 183 B.R. at 289. This proves too much.

Section 542(a) itself expressly recognizes one circumstance in which turnover is not required, namely, when the "property is of inconsequential value or benefit to the estate."[8] Under *Knaus,* that would not be a valid defense to § 362(a)(3) because § 362(a)(3) contains no exception for property of inconsequential value or benefit to the estate. Congress would not logically have intended that the estate expressly not be entitled to turnover under § 542(a) in such a case but for the creditor simultaneously to be required by § 362(a)(3) to turn over the collateral.

More importantly, § 542(a) also limits turnover to property that can be used under § 363. Under § 363(e) the creditor can obtain an order prohibiting a proposed use of the property unless the estate provides adequate protection. This constitutes a significant defense to the grant of a turnover order under § 542(a). The defense would be abrogated by an interpretation of § 362(a)(3) requiring turnover without permitting invocation of the defense.

Such an approach is contrary to the logical interaction of §§ 363(e) and 542(a). The burden is on the trustee, when the issue is raised, to prove adequate protection. 11 U.S.C. § 363(o)(1). Logically, therefore, the creditor should be entitled to hold onto the property during the pendency of the § 542 action until the adequate protection question is resolved. The obvious rationale implicit in permitting the secured creditor to retain possession of the seized property while opposing turnover under § 542(a) is that the creditor may suffer the very harm that adequate protection is designed to avoid if the property is turned over to the trustee before the trustee proves that the creditor is being given the adequate protection to which it is entitled.

Finally, § 363(c)(2) provides that the trustee may not use cash collateral without the creditor's consent or a court order. Section 542(a) does not require turnover of such collateral in a creditor's possession[9] when there

---

8. 11 U.S.C. § 542(a).

9. A creditor might, for example, hold marketable securities as collateral pursuant to a pledge.

has been no consent or court order. But under *Knaus,* the creditor would be required to relinquish possession.

### B

Beyond being statutorily illogical, the creation of such an affirmative duty on the creditor's part immediately to turn over the property pursuant to the automatic stay would also represent a dramatic shift from pre-Code practice and pre-amendment practice and a dramatic expansion of the automatic stay.

In *Whiting Pools,* the Court noted that "[u]nder Chapter X, the reorganization chapter of the Bankruptcy Act of 1878 . . ., the bankruptcy court could order the turnover of collateral in the hands of a secured creditor. *Reconstruction Finance Corp. v. Kaplan,* 185 F.2d 791 (1st Cir.1950)." 462 U.S. at 208, 103 S.Ct. at 2315 (other citations omitted).[10] The case cited by the Court, *Kaplan,* confirms that pre-Code such a turnover required an order of the court and required some proof of adequate protection by the debtor or trustee before such a turnover was ordered. 185 F.2d at 797–98. In *Kaplan,* the trustee brought a motion seeking turnover of all the debtor's "plant, machinery, fixtures, equipment, inventory, materials and supplies," which had been seized prepetition by a secured creditor pursuant to a valid lien. *Id.* at 792. In affirming the district court's turnover order, the court of appeals emphasized that the debtor had "substantial equity" in the collateral, making the secured creditor substantially oversecured, and that the "security interest of [the secured creditor] in the inventory is safeguarded, indeed will be enhanced in value by the transfer of its lien to the net proceeds of the sales. . . ." *Id.* at 797.

Furthermore, as can also be seen from the *Whiting Pools* decision, under the Code, prior to the § 362(a)(3) amendment, the common practice of conditioning turnover orders on proof of adequate protection continued.

Courts uniformly supported the practice that "[a] secured creditor may insist upon adequate protection *as a condition precedent* to the turnover of property since the property may not be used, sold or leased under section 363 without it." *In re Purbeck & Assoc., Ltd.,* 12 B.R. 406, 408 (Bankr.D.Conn.1981) (emphasis added); *accord In re Williams,* 44 B.R. 422, 425 (Bankr.N.D.Miss.1984); *In re Loof,* 41 B.R. 855, 856 (Bankr.E.D.Pa.1984); *In re Radden,* 35 B.R. 821, 826 (Bankr. E.D.Va.1983); *In re Day Resource & Development Co., Inc.,* 21 B.R. 176, 177 (Bankr.D.Idaho 1982); *In re Bridges,* 19 B.R. 847 (Bankr.D.Me.1982); *In re Williams,* 6 B.R. 789, 792 (Bankr.E.D.Mich.1980); *In re Fairway Records, Inc.,* 6 B.R. 162, 164 (Bankr.E.D.N.Y.1980); *In re Troy Ind. Catering Serv.,* 2 B.R. 521, 526 (Bankr. E.D.Mich.1980).

Hence, were this court to interpret the ambiguous amendment to § 362(a)(3) to require immediate turnover, it would represent a dramatic shift in both pre-Code and pre-amendment practice, all of which without one word of legislative history. It is difficult for this court to believe that Congress intended such a radical change, and the court declines to adopt it.

### C

Finally, from the perspective of equity, the potential harm to the secured creditor of requiring immediate turnover far outweighs any harm to the debtor or the estate. From the creditor's perspective, such a turnover is without any guarantee of adequate protection, such as proof of insurance, to which the creditor is clearly entitled. In the case of an uninsured automobile, this is a depreciating asset subject to tremendous risk of diminution in value and even possible destruction in the event of an accident.

Furthermore, prepetition repossession is often undertaken to assure adequate protection (such as when a car is uninsured or a lack of interest payments has increased the

---

10. The Court further noted that, in contrast, in some cases "[u]nder the old Bankruptcy Act, a bankruptcy court's summary jurisdiction over a debtor's property was limited to property in the debtor's possession when the liquidation petition was filed." 462 U.S. at 206 n. 13, 103 S.Ct. at 2314 n. 13. Those cases were, even more than Chapter X, a far cry from requiring immediate turnover by creditors.

liability above the car's liquidation value). Congress likely did not intend to alter the status quo of repossessed property until the question of adequate protection could be addressed. It is one thing for the Bankruptcy Code to allow the debtor to use property in the debtor's possession without the question of adequate protection being first addressed: as outside bankruptcy, the creditor has to take an affirmative act to protect itself, with the alteration being that the Bankruptcy Code requires that such an act be a request to the court for adequate protection under § 363(e) or § 362(d)(1).[11] It is quite another thing to require turnover of repossessed property to the debtor without adequate protection being first addressed: the repossession and the associated substantial repossession costs are circumstances which present a greater likelihood of a lack of adequate protection being present.

By forcing immediate turnover without addressing adequate protection, the *Knaus* interpretation of § 362(a)(3) would render the costs of prepetition repossession a totally wasted expense when the lack of adequate protection leads to relief from the automatic stay and a second repossession. That would represent an unwarranted alteration of the parties' prepetition bargaining strengths, with no suggestion in the legislative history that § 362(a)(3) was intended to alter this.

Collateral repossession is often an expensive procedure. A secured creditor may require the services of a trucking company, security guards and have to pay for alternative storage facilities when dealing with inventory and equipment collateral. Faced with significant repossession expenses on

the one hand and a rapidly declining collateral (inventory and accounts) position on the other, the debtor's threats that repossession may result in its Chapter 11 filing takes on added significance and risk after *Knaus.*

John C. Chobot, Some Bankruptcy Stay Metes and Bounds, 99 Com.L.J. 301, 307 n. 43 (1994).

Additionally, the effect of interpreting § 362(a)(3) as requiring immediate turnover would be to destroy some security interests. Under non-bankruptcy law, some security interests arise solely from the creditor's possession of the collateral, as in the case of a pledge. If such property is turned over to the debtor, the security interest would no longer exist. It is doubtful that the bankruptcy court could declare to the contrary, and such a declaration would not protect the creditor if the collateral were dissipated or destroyed before adequate protection was accorded the creditor[12] or if the case were dismissed (for example, in chapter 13, on the debtor's motion under 11 U.S.C. § 1307(b)[13]). Congress surely could not have intended to destroy such possessory liens by its amendment of § 362(a)(3).[14]

In contrast, the potential harm to the debtor or the estate is minimal. If the creditor refuses to turn over property seized prepetition, then the debtor or trustee simply files an adversary proceeding[15] seeking turnover under § 542(a) against the creditor possessing property seized prepetition and proves that the creditor is being accorded adequate protection of its interest in the property in

---

**11.** The creditor can seek emergency *ex parte* relief from the stay (for example when a car is uninsured) under F.R.Bankr.P. 4001(a)(2).

**12.** The creditor could not avail itself of 11 U.S.C. § 507(b) if conditions for adequate protection were not first imposed. Protection under § 507 would fall short if there are no or insufficient estate funds to pay administrative claims.

**13.** *See In re Elder,* 184 B.R. 403 (Bankr.D.D.C. 1995) (court must dismiss a chapter 13 case on the debtor's motion despite the merits of any pending motion to convert).

**14.** This analysis is not altered by dictum in *Whiting Pools* to the effect that § 542(a) may not require turnover of pledged property, property

held by the creditor rightfully prepetition as in the present case. *Whiting Pools,* 462 U.S. at 206 n. 14, 103 S.Ct. at 2314 n. 14. This dictum by the Court has been rejected by subsequent case law. *See In re Dunlap,* 143 B.R. 859 (Bankr. M.D.Tenn.1992); *In re Leeling,* 129 B.R. 637 (Bankr.D.Colo.1991); *In re Ayscue,* 123 B.R. 28 (Bankr.E.D.Va.1990); *see also Reconstruction Finance Corp. v. Kaplan,* 185 F.2d 791, 795 (1st Cir.1950).

**15.** Turnover pursuant to § 542(a) is instituted by an adversary proceeding. *See* F.R.Bankr.P. 7001.

return for turnover. If the debtor or trustee cannot make that showing, then the Code contemplates that turnover ought not ensue.

This court finds the concerns expressed by the *Knaus* court about the cost to the debtor or the estate of such a procedure exaggerated.[16] There is no filing fee for the debtor to file an adversary proceeding.[17] And, although the trustee is required to pay the filing fee out of the estate, that payment may be deferred until there are sufficient estate assets to pay it [18] and the filing fee would be a recoverable cost against the creditor if the trustee is victorious. Furthermore, if the debtor or trustee needs immediate relief, under F.R.Bankr.P. 7065, the debtor or trustee may seek a temporary restraining order and preliminary injunction as part of the adversary proceeding without the usual non-bankruptcy requirement of posting a bond.[19] The debtor's or trustee's attorney's fees would be a burden but if the creditor frivolously defended against the turnover proceeding, sanctions would be available.[20] When the creditor declines to defend, the fees would be minimal.[21] And immediate turnover ought

not be required in cases in which the creditor presents a non-frivolous defense, a lack of adequate protection, even if it means the debtor or trustee will incur attorney's fees.[22]

## VI

That the exercise control language in § 362(a)(3) requires only that the secured creditor maintain the status quo is also supported by a decision in this circuit in *United States v. Inslaw*, 932 F.2d 1467 (D.C.Cir. 1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). In *Inslaw*, the debtor alleged that the Justice Department's continued use and dissemination of the debtor's trade secrets in computer software that were the subject of a title dispute constituted an act to "exercise control over the property of the estate" prohibited by § 362(a)(3). In reversing this court's decision [23] that the Justice Department had willfully violated the automatic stay, the District of Columbia Court of Appeals discussed the inherent limitations and boundaries of the automatic stay under § 362(a).

> Congress deemed that minimal harm to be an important factor in crafting the legislation, Congress likely would have addressed it by expressly providing for a shifting of fees rather than a wholesale departure from a longstanding procedure of an orderly determination of adequate protection as a condition for turnover.

**16.** *In re Knaus*, 889 F.2d at 775.

**17.** Appendix to 28 U.S.C. § 1930(6).

**18.** Appendix to 28 U.S.C. § 1930(6).

**19.** *See* F.R.Civ.P. 65(c).

**20.** When the creditor's interest in its collateral is clearly already adequately protected, the debtor could invoke F.R.Bankr.P. 9011 to impose sanctions regarding signed filings, even when filed in good faith, that fail to meet the standards of that rule, and could invoke the court's inherent powers to impose sanctions for bad faith conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

**21.** If the creditor capitulates upon the filing of the turnover proceeding by not defending, the attorney's fees burden on the debtor will have been minimal. That minimal harm would have to be borne by the debtor under the "American Rule" and there is no suggestion in the legislative history of the Bankruptcy Code or of any of its amendments which suggests that Congress intended 11 U.S.C. § 362(a)(3) to be interpreted to require automatic turnover of collateral in order that the debtor might avoid that minimal harm, a harm commonly shared by numerous other litigants who successfully prevail in litigation. If

**22.** When a creditor defends on the basis of a non-frivolous assertion of lack of adequate protection and loses, the attorney's fees burden the debtor incurs may not be minimal. But that simply reflects the price of a system that conditions a debtor's use of collateral on the debtor's showing adequate protection. When the creditor advances non-frivolous arguments that adequate protection is not being provided, it makes sense that the courts require that the debtor first rebut those arguments before being allowed to use the collateral. Otherwise the debtor would be allowed to use the collateral even in the case in which it cannot rebut those arguments, thus subjecting the creditor to the unfair risks of a lack of adequate protection. Perhaps there ought to be fee-shifting when the creditor loses on a non-frivolous defense, but that is an entirely different question raising concerns about the wisdom of the "American Rule" against awarding fees to the prevailing party.

**23.** *In re Inslaw, Inc.*, 83 B.R. 89 (Bankr.D.D.C. 1988) (Bason, J.).

The court of appeals was primarily concerned with the expansion of bankruptcy jurisdiction that would result from such a broad reading of the stay.

> If the bankruptcy court's idea of the scope of "exercise of control" were correct, the sweep of § 362(a) would be extraordinary—with a concomitant expansion of the jurisdiction of the bankruptcy court.

*Id.* at 1472.

The court of appeals further noted, however, that such a broad reading of § 362(a) would also be contrary to Congress's intent.

> Even apart from constitutional concerns, [the debtor's] view of § 362(a) would take it well beyond Congress's purpose. The object of the automatic stay provision is essentially to solve a collective action problem—to make sure that creditors do not destroy the bankruptcy estate in their scramble for relief. Fulfillment of that purpose cannot require that every party who acts in resistance to the debtor's view of its rights violates § 362(a) if found in error by the bankruptcy court.... Since willful violations of the stay expose the offending party to liability for compensatory damages, costs, attorney's fees, and, in some circumstances, punitive damages, see 11 U.S.C. § 362(h) (1988), it is difficult to believe that Congress intended a violation whenever someone already in possession of property mistakenly refuses to capitulate to a bankrupt's assertion of rights in that property.

*Id.* at 1473 (citation omitted).

Continuing in the same vein, the court of appeals chastised the bankruptcy court for finding a violation of the stay for a "failure to cure alleged *pre*-petition misconduct." *Id.* (emphasis in original).

> Here the bankruptcy court appears to have left the words of the statute in the dust. The automatic stay, as its name suggests, serves as a restraint only on acts to gain possession or control over property of the estate. Nowhere in its language is there a hint that it creates an affirmative duty to remedy past acts of fraud or bias or harassment as soon as a debtor filed a bankruptcy petition. The statutory language makes clear that the stay applies only to acts taken *after* the petition is filed.

*Id.* (emphasis in original; citations omitted).

■ The court of appeals' view of § 362(a)(3) supports this court's conclusion that Congress did not intend to expand the automatic stay to *mandate* affirmative acts on the part of the creditors. Nor did Congress intend with this amendment to abrogate the creditor's right to assert an entitlement to adequate protection prior to turnover. Rather, as the court of appeals stated, the stay is intended only to *prohibit* postpetition affirmative acts by creditors and thus acts as a freeze of the status quo at petition.

### Conclusion

For all these reasons the court concludes that Toyota Motor should not be cited for contempt for retaining possession of the debtor's vehicle in this case pending resolution of the question of adequate protection. An appropriate order will follow.