In re **DIAMOND INDUSTRIAL CORPORATION, Debtor.**

**Diamond Industrial Corporation, Plaintiff,**

v.

**Luz Alakrah, Errol Browne, Juliana Stanislas, Maricia Walters, Garfield Saunders, Arleen Smith, Juan Batista, Matthew Wilfred, Rita Wilfred, Stedroy Morton, Paulette Morton, Ruben Ayala, Albert Huggins, Graciela Davis, James Gumbs, Elista Frederick, Ralph Mathew, Norma Torres, Ana Rosa Morales, Jose Rivera, Luz Percy, and Carmen Gonzalez.**

**Bankruptcy No. 1–01–0003–BM. Adversary No. 1–01–0002–BM.**

United States Bankruptcy Court, D. Virgin Islands, St. Croix Division.

Aug. 2, 2001.

Edward L. Barry, Greenville, MI, for Plaintiff.

Pamela Lynn Colon Wood, for Defendants.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor-in-possession Diamond Industrial Corporation (hereinafter "debtor") has requested a preliminary injunction prohib-

iting defendants from withholding land contract installment payments owed to debtor which are now in an account under the control of their attorney and requiring defendants to turn over all amounts thus far deposited in the account.

Defendants assert that we are required to abstain from hearing this case in light of a pending lawsuit they have brought in another forum against debtor's president. They alternatively deny that a preliminary injunction is appropriate in this instance.

We conclude, for reasons set forth below, that we need not abstain and that the requested preliminary injunction should issue.

## — FACTS —

Debtor is a corporation which is in the business of developing real estate on St. Croix in the United States Virgin Islands.

Debtor acquired real property for development purposes from Diamond Trust in 1988. The obligation was secured by a mortgage against the property in favor of Diamond Trust. Debtor made principal and interest payments on the obligation on a ongoing basis as funds were generated from sales of parcels of the property to third parties. The present balance due and owing on the loan is approximately $500,000.

On April 17, 1998, debtor obtained a loan from Bank of Nova Scotia to finance development of a new subdivision on the property debtor previously had purchased from Diamond Trust. A portion of the loan proceeds was used to pay principal and interest on the debt owed to Diamond Trust and for a partial release of the mortgage in favor of the Diamond Trust for certain lots on the new subdivision. The present balance due and owing on this loan is approximately $85,000.

Debtor sold thirty lots in the new subdivision in 1998 and 1999. The land installment contracts did not obligate debtor to issue a deed and obtain a complete release of the mortgage lien in favor of Diamond Trust until the purchaser had paid in full for the lot.

Debtor defaulted in 2000 on its obligation to Diamond Trust, which eventually initiated a foreclosure action against the property debtor had purchased from it. Debtor ultimately consented to a judgment in foreclosure in favor of Diamond Trust in exchange for the promise of Diamond Trust to forebear executing on the judgment until January of 2001 and to recognize the rights of lot purchasers who had paid for their lots.

When debtor could not garner the funds necessary to satisfy Diamond Trust, it filed a voluntary chapter 11 petition on February 27, 2001, thereby staying a judicial sale of the property.

A public furor erupted after debtor filed its bankruptcy petition. Press reports indicated that certain of the defendants named herein, all of whom had purchased lots from debtor, denied knowing of the existence of the mortgage in favor of Diamond Trust. A local solon entered the fray by announcing that she would have her attorney, Lee J. Rohn, Esq., investigate the matter.

At some time after the bankruptcy filing, Diamond Trust pledged that it would release lots from its mortgage upon receipt of proof of payment in full of the land contract for that lot. Diamond Trust also pledged that if the automatic stay were lifted and a judicial sale of the property took place, it would not foreclose on the interest of any lot purchaser who paid the amounts due under the purchaser's land installment contract.

On March 20, 2001, attorney Rohn filed suit in the Territorial Court of the Virgin Islands on behalf of the defendants named in this adversary action against David Hayes, debtor's president. Debtor was not named as a defendant in the lawsuit. The complaint alleges that Hayes committed fraud and intentionally or negligently inflicted emotional distress upon them by failing to disclose the existence of the mortgage lien in favor of Diamond Trust and seeks compensatory and punitive damages.

On April 4, 2001, after debtor had filed its bankruptcy petition, attorney Rohn notified debtor through its counsel that in March of 2001 defendants herein had ceased making payments to debtor that were due under their installment land contracts and instead had begun making the payments to an account under her control. Attorney Rohn rejected debtor's repeated demands that she cease interfering with debtor's collection of its accounts receivable.

Debtor brought this adversary action against the above-named defendants, alleging that defendants had participated in a scheme devised by attorney Rohn whereby they would deposit all land contract installment payments owed to debtor into an account under her control instead of remitting the payments to debtor. The complaint further asserts that the conduct of defendants and their counsel constituted a willful violation of the automatic stay, in particular §§ 362(a)(3) and (a)(4) of the Bankruptcy Code, and seeks actual and punitive damages in accordance with § 362(h). Simultaneously therewith, debtor filed a motion for a preliminary injunction prohibiting defendants from further interfering with debtor's collection of its accounts receivable and directing defendants to turn over all amounts owed to debtor in the account of their attorney.

An evidentiary hearing on the motion for a preliminary injunction and defendants' opposition thereto was conducted on July 30, 2001, at which time both sides were given an opportunity of present evidence.

— DISCUSSION —

**Mandatory Abstention.**

28 U.S.C. § 1334(c)(2) provides as follows:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Defendants preliminarily argue that this provision requires us to abstain from hearing this adversary action because of the lawsuit against debtor's president presently pending in the Territorial Court of the Virgin Islands. This assertion is without merit because the provision does not apply in this instance.

By its express terms, § 1334(c)(2) applies to proceedings based upon a State law claim or cause of action which is related to a case under title 11 *and which do not arise under or arise in a case under title 11*. Instead of being based upon a State law claim or cause of action that is "related to a case under title 11", the present case "arises in a case under title 11".

The phrase "arising in a case under title 11" refers to proceedings that involve a cause of action that is created or deter-

mined by a statutory provision of title 11. *Michigan Employment Security Commission v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir.), *cert. dismissed*, 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992).

■ Contrary to defendants' assertion, the gravamen of debtor's complaint does not involve a State law claim or cause of action that is related to a case under title 11. It instead alleges a violation of the automatic stay, a creation of the Bankruptcy Code, and seeks actual and punitive damages in accordance with § 362(h) of the Bankruptcy Code for defendants' alleged willful violation of the automatic stay.

The matter does not end there. Debtor is not a party to the lawsuit now pending in the Territorial Court of the Virgin Islands. The sole defendant named therein is debtor's president. A judgment in the case against debtor's president, assuming that to be the outcome, would not be a judgment against and would not impose liability upon debtor.

Even if debtor were a party to the action, however, we have no basis for concluding that the matter will be timely adjudicated by the Territorial Court. This adversary action has been put on a "fast track" and most likely will be adjudicated long before the lawsuit pending in the Territorial Court. Defendant therein has not even answered the complaint but instead has brought a motion to dismiss which is still pending. As far as we are able to determine, the Territorial Court has not set a trial date for the case.

### Preliminary Injunction.

■ To obtain a preliminary injunction, debtor must demonstrate that: (1) it is reasonably likely to prevail on the merits of its action; and (2) it likely will suffer irreparable harm unless a preliminary in-

junction issues. Both of these requirements must be met before a preliminary injunction may issue. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000). To the extent they are relevant, we also should consider: (3) the likelihood of irreparable harm to the non-moving party if a preliminary injunction issues; and (4) whether a preliminary injunction would serve the public interest. *Id.*; *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994).

■ We should endeavor to balance these considerations when determining whether or not a preliminary injunction should issue. *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.* 222 F.3d 132, 140 (3d Cir.2000)(citing *Allegheny Energy, Inc. v. DQE*, 171 F.3d 153, 158 (3d Cir. 1999)). A preliminary injunction should issue only if, on balance, the evidence favors such relief. *American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994), *cert. denied*, 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995).

■ The party seeking a preliminary injunction has the burden of proof with respect to each of the elements necessary for one to issue. *Acierno*, 40 F.3d at 645.

### I.) *Likelihood Of Success On The Merits.*

Paragraph 10 of the complaint in this adversary asserts that the actions of defendants and their counsel constitute a willful violation of the automatic stay, in particular §§ 362(a)(3) and (a)(7), and seeks to recover damages in accordance with § 362(h).

■ The filing of a bankruptcy petition operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". 11 U.S.C. § 362(a)(3).

It also stays "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor". 11 U.S.C. § 362(a)(7). An individual injured by a willful violation of the automatic stay is entitled to recover actual damages, including costs and attorney's fees, and may even recover punitive damages in appropriate circumstances. 11 U.S.C. § 362(h).

■ The land contract installment payments defendants withheld and deposited instead into an account under the control of their attorney unquestionably qualify as property of debtor's bankruptcy estate. Debtor had a legal interest in the payments and was entitled to receive them once they became due and owing.

Defendants also unquestionably were aware of debtor's bankruptcy case when they withheld the payments. Instead of acceding to debtor's numerous demands that they remit the payments to debtor as they became due, defendants acted in concert with attorney Rohn subsequent to the filing of the bankruptcy petition and instead deposited them into an account maintained by attorney Rohn.

The Third Circuit apparently has not decided whether a party's knowing post-petition retention of property of the bankruptcy estate constitutes "exercising control" over it for purposes of § 362(a)(3), in violation of the automatic stay.

There is substantial authority elsewhere on a circuit level for the proposition that relention of estate property constitutes "exercising control" for purposes of § 362(a)(3). E.g., *State of California Employment Development Dept. v. Taxel (In re Del Mission Limited)*, 98 F.3d 1147, 1152–53 (9th Cir.1996); *Knaus v. Concordia Lumber Co., Inc.*, 889 F.2d 773, 774–75 (8th Cir.1989); *TranSouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 682 (6th Cir. BAP 1999).

Other lower courts, however, disagree and have held instead that "exercising control" for purposes of § 362(a)(3) requires a "more affirmative act" than "passively retaining possession" of estate property. E.g., *In re U.S. Physicians, Inc.*, 235 B.R. 367, 375–76 (Bankr.E.D.Pa.1999); *In re Young*, 193 B.R. 620, 623–29 (Bankr. D.D.C.1996); *In re Richardson*, 135 B.R. 256, 258–59 (Bankr.E.D.Tex.1992). As far as we can determine, no Circuit Court of Appeals has adopted this position

■ We need not takes sides in this ongoing dispute and decide which holding is correct as a matter of law. Regardless of which is correct, there is at the very least a reasonable probability that debtor will succeed on the merits of its claim that defendants "exercised control" over estate property for purposes of § 362(a)(3) when defendants deposited installment payments owed to debtor into an account controlled by their attorney instead of paying them over to debtor as they became due.

If we adopt the former position, a strong case can be made that defendants "exercised control" over the installment payments merely by virtue of retaining them in an account under the control of their attorney instead of paying them over to debtor as they became due.

A strong case also can be made that defendants "exercised control" over the installment payments for purposes of § 362(a)(3) even if we adopt the latter position. One might reasonably infer from the evidence presented that defendants *affirmatively acted* to exercise control over the installments by acting in concert with attorney Rohn to devise and implement a plan whereby they would deposit the payments into an account under the control of attorney Rohn instead of paying them over to debtor pending resolution of their dispute with debtor's president.

Affirmative action on defendants' part is further evidenced by actions undertaken on defendants' behalf by their attorney in demanding and seeking to negotiate more favorable terms relating to the land installment contracts while holding hostage past-due installment payments.

The matter does not end there. Debtor, we have noted, ultimately requests a determination that defendants willfully violated the automatic stay and consequently seeks, in accordance with § 362(h), to recover actual and punitive damages for the injury it has suffered as result of defendants' conduct.

■■ Debtor's status as corporation does not pose an obstacle to its obtaining such relief. Although § 362(h) speaks only of individuals obtaining such relief, a corporate debtor also may qualify. *Cuffee v. Atlantic Business and Community Development Corp. (In re Atlantic Business and Community Development Corp.)*, 901 F.2d 325, 329 (3d Cir.1990).

■■ Specific intent to violate the automatic stay is not required for a violation of the automatic stay to be "willful" for purposes of § 362(h). Damages may be awarded upon finding that: (1) defendant knew of the automatic stay; and (2) defendant's actions in violation of the automatic stay were intentional. *Id.* A defendant's good faith belief that it had a right to take the action it took is irrelevant to whether defendant acted willfully. *Id.*

■■ We have determined that defendants knew of the bankruptcy filing before they intentionally withheld installment payments owed to debtor and instead deposited them into an account under the control of their attorney. Because defendants acted on the advice of their attorney, one might reasonably infer that they also had constructive knowledge that their actions violated the automatic stay and that

debtor therefore has a reasonable probability of succeeding on the merits of its § 362(h) cause of action.

## II.) *Irreparable Harm To Debtor Absent a Preliminary Injunction.*

■■ Irreparable harm is present if the party seeking a preliminary injunction demonstrates a significant risk of experiencing harm that cannot adequately be compensated for by an after-the-fact award of monetary damages. This is "not an easy burden" to meet. *Adams*, 204 F.3d at 484–85.

■■ Temporary loss of income which is recoverable later on normally does not suffice. As the phrase indicates, the injury suffered must be "irreparable". The possibility that adequate compensation or other relief may be available in the ordinary course of litigation weighs heavily against a finding of irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952–53, 39 L.Ed.2d 166 (1974).

■■ Debtor almost certainly will experience irreparable harm unless the requested preliminary injunction issues.

Prior to the filing of its bankruptcy petition, payments debtor received from purchasers of lots totaled in excess of $7,000 per month. After defendants started withholding their monthly payments, debtor's receivables dwindled to approximately $2,000 per month.

To fund its contemplated plan of reorganization, debtor presently is negotiating with a lender to borrow approximately $600,000 (or more) so that it may pay Diamond Trust and the Bank of Nova Scotia in full. No lender is willing to lend debtor money with which to accomplish this if debtor's revenue stream is only $2,000 per month. At a minimum, debtor will need a revenue stream of at least $4,000 per month just to pay the interest

on such a loan and will need considerably more to reduce the principal balance.

If defendants resume making monthly payments to debtor and return payments they already have withheld, debtor stands a reasonable chance of successfully reorganizing. Without these payments, however, debtor undoubtedly will have no chance of successfully reorganizing. Were this to occur, debtor would have to undergo liquidation in a chapter 7 proceeding and would cease to exist. Such an outcome—i.e., ceasing to exist—is in our estimation a quintessential example of irreparable harm.

### III.) Irreparable Harm To Defendants If a Preliminary Injunction Issues.

Defendants' present course of action is baffling in that it could result in significant harm to them should they persist. They will default on their obligations and would be subject to a foreclosure action against their interest in the lots they have purchased.

■■■ What is more important, it appears that defendants will suffer no harm in this instance if the requested preliminary injunction issues. To the contrary, it would appear to inure to their benefit. Diamond Trust publicly pledged not to take any action against the lots purchased by defendants if defendants continued making installment payments and will fully release its mortgage lien against a lot upon receipt of proof of payment in full for that lot.

Defendants asserted for the first time at the evidentiary hearing on debtor's motion for a preliminary injunction that Diamond Trust is not legally bound by its pledge and that they would suffer considerable harm should a preliminary injunction issue and Diamond Trust then reneges on its pledge. This argument, which was not foreshadowed in defendants' response in opposition to the motion for a preliminary injunction, is not persuasive.

If defendants become current on their obligation to debtor and continue making payments in a timely manner, there is a strong probability that Diamond Trust would be estopped from maintaining that it was not bound by the pledge. Were Diamond Trust to request relief from stay so that it could foreclose against defendants' lots because of a default by debtor, it is unlikely that we would grant such relief.

### IV.) The Public Interest.

■■■ As a practical matter, the public interest favors issuance of a preliminary injunction if the movant has demonstrated both a reasonable likelihood of succeeding on the merits of its claim and the prospect of suffering irreparable harm if one does not issue. Even so, we should consider and weigh all of the above-enumerated factors before issuing one. *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 1438 (3d Cir.1994).

■■■ We conclude for various reasons that a preliminary injunction in this instance would in fact serve the public interest.

The public interest unquestionably is served by a preliminary injunction. At the very least, it gives debtor an opportunity to successfully reorganize. A successful reorganization would be in the best interest of debtor's creditors and employees and would preserve debtor's status as a taxpayer. Moreover, the public interest unquestionably favors enjoining a course of conduct that knowingly violates a cornerstone of federal bankruptcy law—i.e., the automatic stay—when such conduct invariably results in debtor's liquidation and the end of its existence as a viable entity.

That is not all. Debtor's unsecured creditors most likely will receive more in the way of payment of their allowed claims

if debtor successfully reorganizes under chapter 11 than they would receive if debtor is liquidated in a chapter 7 proceeding. A preliminary injunction will increase the prospect of the former scenario while presumably decreasing the likelihood of the latter.

### V.) Conclusion.

After weighing the above four considerations as they apply to this case, we conclude that they overwhelmingly favor issuance of the requested preliminary injunction. Debtor is likely to succeed on the merits of its § 362(h) cause of action and unquestionably would suffer irreparable harm in the absence of a preliminary injunction. Defendants, on the other hand, would not appear to suffer any harm or injury at all and most likely would benefit if one issues. A preliminary injunction also would serve the public interest primarily because the amount that debtor's unsecured creditors would receive in payment of their allowed claims probably will be greater than if a preliminary injunction does not issue.

An appropriate order shall issue.