A94A2603. RICKER v. FIRST FEDERAL OF LACROSSE-
MADISON.
(452 SE2d 583)

BEASLEY, Presiding Judge.

Ricker and Herren executed a promissory note in favor of Cobb Federal Savings Bank in the principal sum of $1,650,000, payable in monthly installments. With these funds, the borrowers purchased a tract of land on which they constructed an apartment complex. To secure the indebtedness, they conveyed to the bank an instrument entitled a "MultiFamily Deed to Secure Debt, Assignment of Rents and Security Agreement." The subject matter of the deed to secure debt was the tract of land and all buildings and improvements. The assignment of rents gave the bank a security interest in the tenants' rental payments. Under the security agreement, the bank was given a security interest in various items of personal property in the apartment complex. To secure the note, the borrowers also executed to the bank an assignment of a $100,000 certificate of deposit.

Approximately two years after the initial monthly installment was due, the borrowers ceased making payments. Cobb Federal notified them that it was accelerating the indebtedness as a result of the default and that if payment was not made within ten days it would proceed with the collection of the note by all legal means, including foreclosure of the security deed. Herren filed for protection under federal bankruptcy laws, which resulted in a stay of foreclosure proceedings. After the stay was lifted, Cobb Federal foreclosed the security deed, sold the property to itself as the highest bidder for $1,725,000, and obtained judicial confirmation of the foreclosure sale.

Prior to the lifting of the stay, Cobb Federal had begun receiving the rent payments being made by apartment residents, in accordance with the assignment of rents. It had also commenced an action against Ricker in state court for damages arising from his failure to make monthly payments on the note. That action was removed to federal court after the Resolution Trust Corporation was appointed

conservator for Cobb Federal. However, the conservator assigned the note, security deed, and cause of action against Ricker to First Federal, and the federal court action was dismissed.

First Federal then instituted this action against Ricker, seeking a deficiency judgment in the principal amount of $433,306.46. In opposition to a motion for summary judgment by First Federal, Ricker filed an affidavit stating that Cobb Federal's notice of intent to foreclose on the apartment complex did not state that any personalty would be foreclosed upon or sold; that following foreclosure Cobb Federal nonetheless took possession of substantial items of valuable personal property subject to the security deed; and that Cobb Federal has never given Ricker any notice or advice as to what became of the personalty or certificate of deposit which also secured the indebtedness. Alternatively, Ricker argued that if First Federal established that he is indebted to it, there nonetheless remains a question of fact with respect to the amount of that liability, in that First Federal made no accounting of the personalty and certificate of deposit. In response, First Federal filed affidavits showing that following foreclosure, $56,567.53 in rents was received pursuant to the assignment of rents; that this amount was applied to delinquent 1990 taxes; and that the $100,000 certificate of deposit was released subsequent to loan origination and prior to default. Ricker continued to oppose First Federal's motion for summary judgment, in that First Federal had still failed to account for the seized personalty.

The court granted summary judgment to First Federal on the issue of Ricker's liability on the note but denied it summary judgment on the issue of the amount owed.

In his appeal, Ricker argues that OCGA §§ 11-9-504 and 11-9-505 require a creditor, upon seizing personal property, to either give notice to the debtor and sell the seized property in a "commercially reasonable manner" or retain the collateral; that if the creditor chooses the former, he may seek confirmation and thereafter pursue a deficiency; that if he chooses the latter, he does so in full satisfaction of the underlying debt; that Cobb Federal chose the latter so that any remaining indebtedness by him on the note has been discharged as a matter of law.

Such argument has been squarely rejected in *McCullough v. Mobiland*, 139 Ga. App. 260, 262 (2) (228 SE2d 146) (1976), as well as *ITT Terryphone Corp. v. Modems Plus*, 171 Ga. App. 710, 712 (2) (320 SE2d 784) (1984). See also *Emmons v. Burkett*, 256 Ga. 855, 856 (2) (353 SE2d 908) (1987) (holding that a creditor's failure to give notice of a sale or conduct a commercially reasonable sale, as required by OCGA § 11-9-504 (3), is not an absolute bar to the creditor's obtaining a money judgment on the underlying debt but rather creates a rebuttable presumption that the sale price of the collateral was ade-

quate); *Wade v. Sport Concession Enterprises*, 138 Ga. App. 17 (225 SE2d 488) (1976) (affirming a jury verdict for the creditor in a suit to recover a balance due on a promissory note, where the evidence showed that it had retaken possession of collateral for the purpose of preserving it from imminent destruction or loss and there was no resale market for it); compare *Bradford v. Lindsey Chevrolet Co.*, 117 Ga. App. 781 (161 SE2d 904) (1968) (reversing the grant of an automobile dealer's motion for j.n.o.v., where the evidence showed that after the automobile was repossessed, the creditor had retained rather than sold it and it was worth approximately the amount sued for at the time suit was filed).

As recognized in *McCullough*, under OCGA § 11-9-505 (2) a creditor may propose to keep seized collateral in satisfaction of the debt so long as he gives required notice and no one objects, but this is a permissive and not mandatory remedy. 139 Ga. App. at 263. Where, as in *McCullough*, *Terryphone*, and the case at bar, there is nothing in the record that suggests that such a proposal was ever made or intended, the creditor's retention of seized collateral does not bar suit on the underlying debt as a matter of law.

This does not mean that the creditor owes no duties to the debtor with respect to the collateral. *Terryphone*, 171 Ga. App. at 712 (3). Once a creditor has possession of the collateral he must act in a commercially reasonable manner and is liable for any damage sustained by the debtor as a result of breach of that duty. Id. Thus, the personalty seized by Cobb Federal must be applied toward liquidation of Ricker's debt, and he is entitled to any damage sustained by him as a result of any failure by Cobb Federal to act in a commercially reasonable manner with respect to the seized personalty. Id.

Ricker also suggests that the facts of this case create a jury question as to whether Cobb Federal's retention of the personalty constituted an accord and satisfaction. In this case, as in *McCullough*, 139 Ga. App. at 260 (1), there is no evidence of any accord and satisfaction. Of course, a satisfaction of the debt would result if the value of the seized personalty equaled the amount of the unpaid indebtedness, as in *Bradford*, supra. There has been no showing that First Federal or its predecessor in interest Cobb Federal entered into any agreement or engaged in any conduct which would discharge Ricker's liability as a matter of law.

*Judgment affirmed. Andrews and Johnson, JJ., concur.*

DECIDED DECEMBER 19, 1994.

*Garvis L. Sams, Jr.,* for appellant.

*Moore & Rogers, Eldon L. Basham,* for appellee.