A97A1054. ORAKA et al. v. JARAYSI.

(486 SE2d 69)

ELDRIDGE, Judge.

This is an appeal from the grant of a renewed motion for summary judgment for appellee, Lee F. Jaraysi, on his suit on a deficiency on two notes secured by a deed to secure debt and a recorded UCC financing statement and on appellants' counterclaim for fraud and racketeering. The trial court denied the initial motion for summary judgment.

On July 16, 1994, appellants, Emeka Sammy Oraka and his wife, Chika C. Oraka, entered into a purchase and sale agreement and closed with appellee on the same day for an automobile service station, mini-mart, laundry, and restaurant known as "Jaraysi's One Stop," as well as the furniture, equipment, fixtures, inventory, and

business assets of the ongoing business. Appellee insisted upon a fast closing because he was leaving the country on family matters. Appellee testified that the parties agreed to allocate the $900,000 purchase price as $820,000 to the improved realty and $80,000 to the personalty. While the sales agreement made the apportionment, such document was only presented to appellants at closing and although they never expressly agreed to such allocation of value, they closed with the documents as drafted. The bill of sale delivered by appellee included substantial business assets not, in fact, owned by appellee but owned by Head Distributing, which demanded and received back its property on September 16, 1994, from appellants.

Shortly after closing, appellants learned that appellee had instituted an action on July 15, 1994, for specific performance in Gwinnett Superior Court against Kyung Ung Kim for an April 18, 1994, lease on the same realty and purchase for $130,000 of the same businesses and personalty, which was sold to appellants on July 16, 1994. Upon learning these things, appellants sought to rescind the contract; however, appellee refused.

Prior to the closing, appellants sought to examine the financial records of the businesses, but appellee refused, stating that the records were out of the country.

When appellants failed to make payment on the notes, appellee foreclosed on the deed to secure debt on May 2, 1995. Notwithstanding the $820,000 value assigned to the realty by appellee, appellee at foreclosure intentionally bid only $600,000 for the property, which purchase price created a deficiency; which purchase price at the confirmation hearing approximately one year later was found to be the fair market value; and which price the record does not show was caused by damage to the property or depressing of the real estate market. Appellee did not deem himself bound by the assigned value and intentionally bid the property in for $220,000 less, causing the deficiency. Under the UCC financing statement, appellee gave notice on December 21, 1994, to appellants that he was, under OCGA § 11-9-503, repossessing all equipment and business assets; appellee stated that he would only give credit as a set-off for the deficiency of the purchase assigned value of such property, $80,000, although in his suit for specific performance he claimed such assets had a value of $130,000.

Appellants' sole enumeration of error is that the trial court erred in granting the motion for summary judgment, because appellee's claims are barred by his election to retain collateral. OCGA § 11-9-505 (2).

Under OCGA § 11-9-505 (2), Georgia follows "strict foreclosure

and rejects any theory of implied election."[1] See *Ricker v. First Fed. of Lacrosse-Madison*, 215 Ga. App. 793, 794-795 (452 SE2d 583) (1994); *ITT Terryphone Corp. v. Modems Plus*, 171 Ga. App. 710, 712 (2) (320 SE2d 784) (1984); *McCullough v. Mobiland*, 139 Ga. App. 260, 262 (2) (228 SE2d 146) (1976); *Wade v. Sport Concession Enterprises*, 138 Ga. App. 17 (225 SE2d 488) (1976); see also *Emmons v. Burkett*, 256 Ga. 855, 856 (2) (353 SE2d 908) (1987). All the foregoing Georgia cases stand for the proposition that, under OCGA § 11-9-504, a creditor may take possession of a secured property pending a commercially reasonable sale or an election under OCGA § 11-9-505 (2), but that such possession under OCGA § 11-9-503 does not trigger an implied election under OCGA § 11-9-505 (2), absent a written notice of such election. Id.

An election under OCGA § 11-9-505 (2) or a written objection must satisfy the statute; neither pleadings nor oral negotiations satisfies the statutory requirements. See *Edward McGill, Inc. v. Wise*, 181 Ga. App. 486, 487 (1) (352 SE2d 809) (1987). Unless the original sales agreement provided that repossession and retention for the creditor's own use would afford an accord and satisfaction or provide for a specified credit only against any deficiency, or OCGA § 11-9-505 (2) provided such rights and obligations, then such material change in the original agreement would be a nullity, because it lacks consideration. See *Barnes v. Reliable Tractor Co.*, 117 Ga. App. 777, 778 (161 SE2d 918) (1968). Therefore, appellee, in his notice of repossession and intent to retain the business asset, cannot unilaterally impose a condition to use the assigned value for purposes of set-off of the deficiency which was not part of the original agreement. Id. at 778. The fair market value of property at the time of repossession must be credited against any deficiency when there has been no election under OCGA § 11-9-505 (2). See *Bradford v. Lindsey Chevrolet Co.*, 117 Ga. App. 781, 782 (161 SE2d 904) (1968); *Ricker v. First Fed. of Lacrosse-Madison*, supra at 795.

After default, a creditor cannot, absent express agreement of the debtor, take the collateral at a specific valuation and only give such credit against the deficiency. See *S. M. Flickinger Co. v. 18 Genesee Corp.*, 71 AD2d 382 (423 NYS2d 73, 27 UCC 1232) (1979); accord

---

[1] *In re La Roche*, 969 F2d 1299, 1303-1304 (1st Cir. 1992); *Lamp Fair, Inc. v. Perez-Ortiz*, 888 F2d 173, 175-177 (1st Cir. 1989) outline three methods to bring about an accord and satisfaction under UCC § 9-505 (2) by the creditor taking possession of secured personalty: (1) written notice after possession that the creditor will keep the property in satisfaction of the debt under UCC § 9-505 (2); (2) implied election under UCC § 9-505 (2) by holding possession for an unreasonable length of time without either sale or election; and, (3) an unreasonably long holding coupled with some other evidence of an intent to elect so that election may be implied by such action or inaction. See also *In the Matter of Deephouse Equip. Co.*, 38 B. R. 400 (Bkrtcy. D. Conn. 1984).

*Barnes v. Reliable Tractor Co.*, supra at 778.

While appellee sent a written notice to appellants under OCGA § 11-9-505 (2) stating that appellee was repossessing all the business assets and would retain them for his own use and seek to offset such repossessed property at an artificial value that he had assigned in the contract as a set-off against the deficiency, neither OCGA § 11-9-505 (2) nor Georgia law permits such unilateral action unless the appellants expressly agree to such condition without a new consideration. Appellants' failure to object is not an express consent to appellee's demand. Appellee's written notice of repossession, of intent not to sell at a commercially reasonable sale, and of intent to keep the property for his own use clearly comes within the ambit of OCGA § 11-9-505 (2) and constitutes an election under such act.[2] Appellee is the author of his own misfortune in seeking to do what the law would not permit him to do. Appellee's deficiency suit is barred by accord and satisfaction under OCGA § 11-9-505 (2).

*Judgment reversed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED APRIL 17, 1997 —
RECONSIDERATION DENIED APRIL 30, 1997 — 
 Before Judge Thompson.

*Lefco & Blumenthal, Stanley M. Lefco, Ned Blumenthal*, for appellants.

*James M. Crawford*, for appellee.

---

[2] *In re Leeling*, 129 B. R. 637 (Bkrtcy. D. Colo. 1991).